943 P.2d 912

Rex E. LANHAM, Jr., Everett Lanham, Todd Lanham and Kenneth Lanham, Plaintiffs–Appellants–Cross Respondents,

v.

IDAHO POWER COMPANY, an Idaho corporation, Defendant–Respondent–Cross Appellant.

No. 23172.

Supreme Court of Idaho.

Boise, April 1997 Term.

Aug. 7, 1997.

Marcus, Merrick & Montgomery, Boise, for appellant. Michael R. Christian argued.

Penland Munther Boardman, Chtd., Boise, for respondent. Richard C. Boardman argued.

TROUT, Chief Justice.

This is an appeal from a jury verdict and judgment in favor of respondent Idaho Power Company (IPC) in a negligence and breach of contract action arising out of a fire which occurred on the Lanhams' property on June 11–12, 1992. We affirm.

## I.

### BACKGROUND

The Lanhams own timbered property along State Highway 21 north of Boise. In 1981, the Lanhams and IPC entered into an agreement (Agreement) whereby the Lanhams granted IPC an easement across the property to allow IPC to install and maintain a power line. Under the Agreement, the Lanhams also gave IPC the right to cut and clear away trees and brush outside the easement which could endanger the line. In return, IPC agreed to exercise reasonable care in maintaining the environmental integrity of the area and to repair any damage to the property caused by its operation or maintenance of the line. In May of 1992, Todd Lanham informed IPC that there were large trees ("danger trees") close to the power line which could fall onto the line. According to the Lanhams, IPC did not remove the trees, and in the area near the origin of the fire, between six and eight danger trees were present. The fire, which burned approximately one hundred acres, began on June 11, 1992. Todd Lanham, the first on the scene, testified that he saw a fallen tree lying across a downed power line.

## II.

### PROCEDURAL HISTORY

On June 29, 1994, the Lanhams sued IPC, alleging negligence and breach of contract. Prior to trial, the Lanhams filed a motion in limine to exclude the anticipated testimony of James Ashby, IPC's fire investigation expert. The court denied the motion. At trial with Ashby on the stand, the Lanhams again objected to his testimony. The court overruled their objections and allowed Ashby to testify as to potential causes of the fire and to offer his opinion that the most likely cause of the fire was a lightning strike.

After trial, the jury returned a verdict in favor of IPC, specifically finding that there was no negligence on the part of IPC that proximately caused the fire and that IPC did not breach its contract with the Lanhams. On November 1, 1995, the Lanhams moved for: (1) judgment notwithstanding the verdict (JNOV) on the issue of IPC's breach of its duty of care and breach of contract for failing to remove the danger trees, and a new trial on the remaining issues; or (2) in the alternative, a new trial on all issues. On June 21, 1996, the court denied the Lanhams' motions. IPC moved for an award of attorney's fees on November 3, 1995, which the court also denied.

Both the Lanhams and IPC appeal. On appeal, the Lanhams contend that the district court erred in denying the Lanhams' motion in limine and admitting, over objection, the testimony of James Ashby at trial. They further argue that the lower court erred in giving Jury Instruction No. 9, which instructed the jury on the duty of care required of an electric utility. Finally, they assert that the court erred in denying their post-trial motions. IPC argues on appeal that the court erred in denying its request for attorney's fees. IPC also seeks attorney's fees on appeal.

## III.

### ASHBY'S TESTIMONY

█ We review lower court decisions admitting or excluding evidence, including the testimony of expert witnesses, under the abuse of discretion standard. *Burgess v. Salmon River Canal Co., Ltd.,* 127 Idaho 565, 574, 903 P.2d 730, 739 (1995) (citing *Hopkins v. Duo-Fast Corp.,* 123 Idaho 205, 210, 846 P.2d 207, 212 (1993)). In the case of an incorrect ruling regarding evidence, a new trial is merited only if the error affects a substantial right of one of the parties. I.R.C.P. 61; I.R.E. 103; *Burgess,* 127 Idaho at 574, 903 P.2d at 739; *Hake v. DeLane,* 117 Idaho 1058, 1065, 793 P.2d 1230, 1237 (1990).

### A. Motion in limine

█ Based on Ashby's pretrial deposition, the Lanhams filed their motion in limine to exclude Ashby's anticipated testimony on the grounds that it lacked foundation, was not based on his independent judgment, and was speculative. They specifically objected to his anticipated testimony that: several events could have ignited the fire; lightning could have struck the Lanhams' property; and

lightning could have started the fire. After hearing arguments on the motion, the court first noted that "reasonably likely causes" of the fire were relevant. The court then held that Ashby could testify at trial but required IPC to lay an adequate foundation prior to his offering an opinion. The court also agreed to hear specific objections to Ashby's testimony at trial.

█ We hold that the lower court did not abuse its discretion in denying the Lanhams' motion in limine. The trial judge is entitled to wait and hear the actual foundation laid at trial prior to determining whether to admit or exclude an expert opinion.

**B. Trial testimony**

At trial, the Lanhams again objected to Ashby's testimony, reiterating the arguments made in their pre-trial motion in limine. The court again overruled the Lanhams' objections.

*1. Potential causes of the fire*

█ On appeal, the Lanhams first assert error in the admission of Ashby's opinion that several causes could have led to the fire. At trial, Ashby began by describing his qualifications as an expert in fire investigation and then discussed the techniques used by trained investigators to ascertain the cause and origin of a fire: determining the origin of the fire (the site where the fire began) and then isolating the cause of the fire by identifying potential causes and eliminating them, one by one. In this case, he stated that he "was not able to make any definitive cause or origin investigation" due to the delay of over two years between the fire and the investigation (a delay caused by the late date of the Lanhams' filing suit). He then testified that he had considered a number of possible causes for the fire on the property, including smoking, vehicles on the road through the fire area, campers, arson, a downed power line, and lightning. Given the weather conditions present on the day of the fire, Ashby asserted that he could not eliminate any of these possible causes. He admitted, however, that he had found no physical evidence at

the fire scene to support smoking, vehicles, campers, or arson as the cause of the fire. He stated that there was evidence that "a tree limb was down on the power lines, the power lines were down, at least fairly early in the fire," but he found no evidence to indicate that the downed power line actually caused the fire.

The Lanhams argue that no evidence in the record supports any causes of the fire other than a downed power line or a lightning strike. As a result, they assert that testimony regarding any cause other than these two should have been excluded as speculative under I.R.E. 403.

We hold that the trial court did not err in permitting Ashby to testify about possible causes of the fire. All reasonably likely causes of the fire were relevant because the fire's cause was a central element of both of the Lanhams' causes of action. Ashby's testimony made it clear that, although he found no physical evidence at the scene of the fire during his on-site investigation three years later, he could not rule out any of the potential causes that he described. Given the process of elimination used by fire investigators to determine the cause of a fire, it was appropriate for Ashby to discuss potential causes that he could not rule out.

*2. Opinion that lightning was the most likely cause of the fire*

█ The Lanhams also argue that the court improperly admitted Ashby's opinion that lightning was the most likely cause of the fire. As grounds for this opinion, Ashby relied on the following evidence: (1) weather conditions on the day of the fire were such that a lightning strike could have ignited the fire; (2) lightning strike data obtained from the Bureau of Land Management (BLM) indicated that lightning had moved through the general area within twenty-four hours prior to the fire; and (3) eyewitnesses testified at trial that, in its early stages, the fire was not burning adjacent to the downed power line but up the hill from it, on the ridge.[1] The Lanhams argue that this opinion was inad-

---

1. Ashby relied on the testimony of Robert and Karen Burden (a neighboring couple) and Forest

Service fire fighters Mike Ford and Tony DeMasters.

missible because it was not supported by an adequate foundation.

### a. BLM lightning strike data

The Lanhams first dispute the admission of Ashby's interpretation of lightning strike data obtained from the BLM. Ashby testified that he had contacted the BLM to see if he could eliminate lightning as a potential source of the fire. He explained that the BLM system detects lightning strikes using various antennae. If a strike is detected by at least two antennae, the approximate site of the strike can be located. Ashby emphasized, however, that this detection system is not designed to pinpoint the location of lightning strikes; instead, it is useful in determining whether a lightning system has passed through a specific area. Given the limitations of the system, which Ashby described in detail, the strikes are plotted geographically with a certain margin of error. With respect to the fire on the Lanhams' property, Ashby testified that the BLM lightning strike data indicated that a "fair amount of lightning" had moved through the area within the twenty-four hours preceding the fire. Ashby emphasized:

I used this information as a fire investigator not to pinpoint that plot or the exact strike, as I have already indicated, but simply as a confirmation that I had lightning moving through the area in a time frame that would be consistent with a fire and, in fact, that is what I found here.

From the data indicating the approximate location of the strikes and the margin of error inherent in the detection system, Ashby concluded that lightning could have struck near the area of the fire within twenty-four hours prior to the fire and thus that he could not rule out lightning as a potential cause of the fire.

The Lanhams argue that this conclusion was not derived from Ashby's independent judgment. Although Ashby used BLM data to form his opinion, his interpretation of this data was clearly a product of his independent judgment. The trial court may, in its discretion, permit an expert to render an opinion based in part on facts or opinions provided by others. Keller Lorenz Co., Inc.

v. Insurance Assocs. Corp., 98 Idaho 678, 683–84, 570 P.2d 1366, 1371–72 (1977). See also Doty v. Bishara, 123 Idaho 329, 335, 848 P.2d 387, 393 (1992); Long v. Hendricks, 109 Idaho 73, 76, 705 P.2d 78, 81 (Ct.App.1985). We hold that the trial court in this case did not abuse that discretion.

Second, the Lanhams contend that, because Ashby was not a meteorological, computer science, or lightning expert, he was not qualified to interpret the BLM data and to render the opinion that lightning could have struck the Lanhams' property. The determination of whether an expert is sufficiently qualified to render an opinion lies within the sound discretion of the trial court. Marty v. State, 122 Idaho 766, 768–69, 838 P.2d 1384, 1386–87 (1992). I.R.E. 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

I.R.E. 703, in turn, provides:

The facts or data ... upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We hold that the trial court did not err in concluding that Ashby was sufficiently qualified to interpret the lightning strike data. The Lanhams do not argue that Ashby was not qualified as an expert in fire investigation. Furthermore, prior to testifying in detail as to what the BLM data indicated to him, Ashby explained that his training and experience in fire investigation encompassed the interpretation of such data. In addition, Ashby testified that fire investigators routinely rely upon such lightning detection data when attempting to determine a fire's cause. In view of this testimony, the trial court did not abuse its discretion in allowing Ashby to testify to his interpretation of such data, as Ashby was trained to interpret it and quali-

fied to base an opinion on those interpretations. *See* I.R.E. 702, 703.

■ According to the Lanhams, the third basis for excluding this opinion was that Ashby found no corroborative evidence of a lightning strike on the Lanhams' property; Ashby admitted that he had discovered no evidence at the scene of the fire to indicate that lightning had struck in the area, and no witness testified at trial that he or she had seen lightning in the area on the day before or the day of the fire. This argument, however, misses the point of Ashby's testimony. He listed several possible causes of the fire and explained why he could not definitively eliminate each of them. When he arrived at lightning as a potential source, he stated that he checked the BLM lightning strike data and that, according to his interpretation, the data indicated that lightning had moved through the general area within twenty-four hours prior to the fire. Thus, he could not rule out, on that basis, the possibility that lightning had caused the fire. He did not, as the Lanhams seem to suggest, testify that lightning had definitely struck the Lanhams' property, nor was he attempting to prove that such a strike had occurred. Ashby simply testified that he could not establish that such a strike had *not* occurred and thus could not eliminate lightning as a potential cause of the fire. The lack of corroborative evidence is thus irrelevant as to whether sufficient foundation was laid for Ashby's opinion.

### b. Eyewitness testimony

■ Finally, the Lanhams argue that Ashby could not reasonably rely on some of the eyewitness testimony offered at trial in forming his opinion that lightning was the most likely cause of the fire. In forming his opinion, Ashby relied, in part, on the trial testimony of the Burdens, neighbors of the Lanhams who witnessed the fire in its early stages, who stated that the fire was burning on the ridge. The Lanhams argue that the Burdens' testimony does not support the inference that the fire began due to a lightning strike on the ridge rather than down by the power line because the Burdens admitted that they could not see the area adjacent to

the power line from their location. This argument, however, goes to the weight that should be accorded the Burdens' testimony— a question that is clearly left to the finder of fact, the jury. Furthermore, the cases cited by the Lanhams in support of their argument do not address the foundational requirements of expert opinion testimony. *See Owen v. Burcham*, 100 Idaho 441, 599 P.2d 1012 (1979); *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974); *Challis Irrigation Co. v. State*, 107 Idaho 338, 689 P.2d 230 (Ct.App.1984). These cases, then, are not analogous to the instant case.

### c. Conclusion

We hold that sufficient foundation was laid at trial for Ashby's expert testimony. The trial court thus did not err in admitting this testimony.

## IV.

### JURY INSTRUCTION NO. 9

■ The Lanhams contend that the district court erred in giving Jury Instruction No. 9, which instructed the jury on the duty of care required of an electric utility. The instruction read:

> Idaho Power is in the business of generating, transmitting and distributing electricity, including through the easement across Plaintiffs' property. A person generating, transmitting or distributing electricity has a duty to exercise the highest degree of care and diligence, in order to avoid injury to property. In order to satisfy its duty to exercise reasonable care, and its duty under the Easement Agreement with the Lanhams to exercise reasonable care to maintain the environmental integrity of the area in proximity to the easement, Idaho Power was required to exercise the highest degree of care and diligence, in order to avoid injury to the Plaintiffs' property. *However, the higher degree of care does not require a power company to guard against all possibilities of an injury but rather to reasonably guard against probabilities.*

(emphasis added). The Lanhams object specifically to the inclusion of the italicized sen-

tence, taken from *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995). On appeal, we review jury instructions as a whole to determine whether they "fairly and adequately present the issues and state the applicable law." *Lawton v. City of Pocatello*, 126 Idaho 454, 462, 886 P.2d 330, 338 (1994). If an instruction misleads the jury or prejudices one of the parties, reversible error occurs. *Id.*, 126 Idaho at 462, 886 P.2d at 338.

The Lanhams contend that the added sentence taken from *Orthman* impermissibly places before the jury an issue not raised by the evidence presented at trial—namely, whether trees falling on power lines creates a probability of injury. They appear to argue that this sentence and our holding in *Orthman* create two different duties of care for an electric utility: the "highest" degree of care where a probability of injury exists, and some lower standard of care where only the possibility of injury exists. The Lanhams assert that, by including the sentence from *Orthman*, the court instructed the jury to determine whether trees falling on power lines creates a probability of harm. This, they argue, was error because no evidence at trial suggested that trees falling on power lines does *not* produce a probability of harm. The instruction, according to the Lanhams, impermissibly allowed the jury to conclude that trees falling on power lines presents a mere possibility of harm, thus triggering a lower duty of care required of IPC.

■ The Lanhams' argument fails for a number of reasons. First, the Lanhams misread *Orthman*. *Orthman* does not create two different duties of care for electric utilities. In *Orthman*, we first reiterated that electric utilities are held to the "highest degree of care." 126 Idaho at 962, 895 P.2d at 563. We then clarified this duty of care by stating that, "this duty is not absolute. We do not require a power company to guard against all *possibilities*, rather we require the company to reasonably guard against *probabilities*." *Id.*, 126 Idaho at 962, 895 P.2d at 563 (citing *Probart v. Idaho Power Co.*, 74 Idaho 119, 128, 258 P.2d 361, 366 (1953)) (emphasis original). In *Orthman*, then, this Court sought to clarify what it

meant by imposing the "highest degree of care" on an electric utility and to distinguish this standard from strict liability. No logical reading of *Orthman* can lead to the conclusion that we sought to create two standards of care for utilities. We hold that, by including the language from *Orthman*, the lower court in the instant case properly modified the standard IDJI instruction to include this clarification and correctly stated Idaho law. *See Morgan v. State of Idaho, Dep't of Pub. Works*, 124 Idaho 658, 665, 862 P.2d 1080, 1087 (1993) (jury instruction upheld where its phrasing conformed with some, but not all, case law on subject).

■ In addition, the Lanhams are simply incorrect in stating that the instruction presented the jury with an issue not supported by the evidence—whether trees falling on power lines creates a probability of injury. First, the issue was not as the Lanhams frame it. To determine whether IPC owed the Lanhams a duty to reasonably guard against the fire by cutting down the alleged danger trees in the easement, the jury had to determine whether the *specific trees in the easement* created a probability of injury. Second, this question *was* placed in issue by the evidence. Although no one disputed that trees falling on power lines creates a probability of fire, one of the contested issues at trial was whether there was a probability that the particular trees in the easement would fall onto the power line. We hold, then, that the instruction as given did not present to the jury an issue not properly before it.

## V.

### MOTION FOR JNOV

■ The issue to be determined on a motion for JNOV is whether substantial evidence supports the jury's verdict. *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 127 Idaho 41, 45, 896 P.2d 949, 953 (1995) (quoting *Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986)). "Substantial evidence" does not require that the evidence be uncontradicted but only that it is "of a sufficient quantity and probative value that reasonable minds could conclude that the verdict

of the jury was proper." *Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643, 658, 827 P.2d 656, 671 (1992) (citations omitted). Upon a motion for JNOV, the moving party, here the Lanhams, admits the truth of all the adverse evidence and all inferences that can be drawn legitimately from it. *Pocatello Auto Color,* 127 Idaho at 44–45, 896 P.2d at 952–53 (quoting *Quick,* 111 Idaho at 763, 727 P.2d at 1191). In ruling on such a motion, the court does not weigh the evidence, assess the credibility of witnesses, or make its own factual findings and compare them to those of the jury. *Id.* at 45, 896 P.2d at 953 (quoting *Quick,* 111 Idaho at 763, 727 P.2d at 1191). Instead, the court is to draw all inferences in favor of the non-moving party. *Id.,* 127 Idaho at 45, 896 P.2d at 953 (quoting *Quick,* 111 Idaho at 763, 727 P.2d at 1191). The motion should be granted only where "there can be but one conclusion as to the verdict that reasonable minds could have reached and when that conclusion does not conform to the jury verdict." *Watson,* 121 Idaho at 659, 827 P.2d at 672 (citations omitted).

▆▆▆ On appeal, we apply the same standard as the trial court ruling on the motion and do not defer to the lower court's views. *Pocatello Auto Color,* 127 Idaho at 45, 896 P.2d at 953 (quoting *Bott v. Idaho State Bldg. Auth.,* 122 Idaho 471, 474, 835 P.2d 1282, 1285 (1992)). Rather, this Court reviews the record and draws all inferences in favor of the non-moving party, here IPC. *Watson,* 121 Idaho at 659, 827 P.2d at 672. Where the evidence conflicts, we must construe the evidence in favor of the jury verdict. *Id.,* 121 Idaho at 659, 827 P.2d at 672.

**A. Jury's verdict that no negligence on the part of IPC proximately caused the fire**

▆▆ The Lanhams contend that the district court erred in denying their motion for JNOV because no reasonable person could have concluded that IPC acted with the highest degree of care in this instance; IPC knew of the alleged danger trees in the easement and nonetheless ordered its agent (the tree-trimming service) not to remove the trees. In their argument, however, the Lanhams ignore the central issue to be decided on a motion for JNOV. The sole issue before us is whether substantial evidence supports the jury's verdict. In this case, the jury found that there was no negligence on the part of IPC that proximately caused the fire. The Lanhams improperly focus on the first portion of this finding and ignore the issue of causation. Considering the verdict as a whole, it is apparent that the jury could have reached its verdict by finding either that IPC had not breached its duty of care, or that IPC had breached this duty but that the breach did not proximately cause the fire. Thus, the Lanhams' motion requesting that the court enter judgment NOV on the sub-issue of IPC's negligence was inappropriately narrow.

▆▆▆ In addition, we hold that substantial evidence supports the jury's verdict that there was no negligence on the part of IPC that proximately caused the fire. At trial, the Lanhams advanced the theory that a downed power line caused the fire and based this theory solely upon Todd Lanham's testimony. Although Mr. Lanham was the first witness to arrive at the scene of the fire, he was not present when it began. He testified that when he arrived at the site of the fire, he saw a tree which was on fire atop the downed power line and that "there was fire up on the hillside on the left, and there was fire down to the right."

Other eyewitness testimony, however, contradicted this statement. Where conflicting, we must construe the evidence in favor of the jury's verdict. *Watson,* 121 Idaho at 659, 827 P.2d at 672. Several witnesses testified that, in the fire's early stages, the area adjacent to the power line was *not* burning but that trees along the ridge, up hill from the power line, were on fire. Michael Ford, a Forest Service employee who fought the fire, stated that he saw a tree lying across the downed power line and that the tree was not on fire when he arrived. In response to the question of whether he remembered if the area around this tree was burning, he testified that it was not, that "[a]ll the fire was above the road." Tony DeMasters, another Forest Service employee who participated in the firefighting efforts, also testified that the

area adjacent to the power line was not burning. The Burdens, a couple who lived nearby, testified that they saw fire on the ridge but not near the area where the power line was located. Although the Burdens admitted during cross examination that they may not have had an unobstructed view of the entire fire, it is not for this Court to assess the credibility of witnesses or to weigh the evidence when reviewing a motion for JNOV; instead, we must construe the evidence in favor of the jury verdict. Finally, Todd Lanham's wife, Kendra, who accompanied him to the site of the fire testified that she did not see the tree lying atop the power lines. In addition, on cross examination, the following exchange took place: "Q. Were you even looking at the area where Todd testified the logs were across the power line? A. No, I was looking at the flames." Kendra's statement that she did not notice the tree lying on the downed power line because she was looking at the burning area gives rise to an inference, which must be drawn in favor of IPC, that the burning area was *not* adjacent to the downed power line.

In addition to this eyewitness testimony, IPC presented the testimony of James Ashby, a fire investigation expert. As discussed in detail above, Ashby testified that he could not make a definitive determination as to the cause of the fire but that, in his opinion, the most likely cause was a lightning strike. The Lanhams called *no* expert witness to rebut Ashby's testimony.

Substantial evidence in the record thus supports the jury's verdict that any alleged negligence on the part of IPC did not proximately cause the fire. We hold, then, that the district court did not err in denying the Lanhams' motion for JNOV on the issue of IPC's negligence.

**B. Jury's verdict that IPC did not breach its contract with the Lanhams**

■■■■ The Lanhams alleged in their complaint that IPC breached the Agreement by failing to properly maintain the easement, thereby damaging the Lanhams' property. Causation was an essential element of this claim; to prevail, the Lanhams had to establish that IPC failed to perform its duties under the Agreement and that this failure proximately caused the fire which damaged the property. Again, the Lanhams focus on the "breach" portion of their cause of action, arguing that no reasonable person could have concluded that IPC had not breached the Agreement. They ignore, however, the causation element. As with the negligence claim, the jury could have found that IPC had breached the contract but that the contractual breach did not cause the fire.

■■■■ As explained above, substantial and competent evidence supports the conclusion that an act or omission on the part of IPC did not proximately cause the fire. Substantial evidence thus also supports the jury's verdict as to the breach of contract action. We hold that the district court properly denied the Lanhams' motion for JNOV on the issue of IPC's breach of its contract with the Lanhams.

## VI.

### MOTION FOR NEW TRIAL

I.R.C.P. 59(a) [2] governs motions for a new trial. The Lanhams appear to have based their motion on subsections six (insufficient evidence to justify the verdict) and seven (errors in law occurring at trial). The Lanhams argue that: (1) the jury's verdict was not supported by substantial evidence and was contrary to the weight of the evidence; (2) the district court committed an error of law by admitting Ashby's testimony; and (3) another error of law occurred when the court included the sentence from *Orthman* in Jury Instruction No. 9.

### A. Standard of review

■■■■ On appeal, we review a trial court's decision to grant or deny a new trial

---

2. I.R.C.P. 59(a) provides in part:
   A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:
   * * *

6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

7. Error in law, occurring at the trial....

for an abuse of discretion, and we will not disturb that decision absent a *manifest* abuse of this discretion. *Pocatello Auto Color,* 127 Idaho at 45, 896 P.2d at 953 (quoting *Westfall v. Caterpillar, Inc.,* 120 Idaho 918, 921, 821 P.2d 973, 976 (1991)) (emphasis added); *Burggraf v. Chaffin,* 121 Idaho 171, 173, 823 P.2d 775, 777 (1991); *Quick,* 111 Idaho at 770, 727 P.2d at 1198. The test for determining whether the court has abused its discretion consists of three inquiries: (1) whether the court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the court reached its decision through an exercise of reason. *Burgess,* 127 Idaho at 573, 903 P.2d at 738 (citing *Rhodehouse v. Stutts,* 125 Idaho 208, 213, 868 P.2d 1224, 1229 (1994)). When reviewing the trial court's decision, we consider the grounds upon which the lower court based its decision to grant or deny the motion. *Hughes v. Idaho Dep't of Law Enforcement,* 129 Idaho 558, 561, 929 P.2d 120, 123 (1996); *Bott,* 122 Idaho at 476, 835 P.2d at 1287.

### B. I.R.C.P. 59(a)(6): Insufficient evidence to justify the verdict

▆▆▆ When a motion for a new trial is based upon Rule 59(a)(6), the trial court must weigh the evidence presented at trial and grant the motion only where "the verdict is not in accord with [its] assessment of the clear weight of the evidence." *Pocatello Auto Color,* 127 Idaho at 45, 896 P.2d at 953 (quoting *Quick,* 111 Idaho at 766, 727 P.2d at 1194). In ruling on the motion, the trial judge must independently assess the credibility of the witnesses. *Quick,* 111 Idaho at 766, 727 P.2d at 1194. The trial judge is not required to construe the evidence in favor of the jury verdict. *Id.* at 767, 727 P.2d at 1195. To grant a new trial, the court must apply the two-prong test enunciated in *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967):(1) the court must find that the verdict is against the clear weight of the evidence and that the ends of justice would be served by vacating the verdict; and (2) the court must conclude that a retrial would produce a different result. *Heitz v. Carroll,* 117 Idaho 373, 378,

788 P.2d 188, 193 (1990); *Robertson v. Richards,* 115 Idaho 628, 631–32, 769 P.2d 505, 508–09 (1987).

▆▆▆ We hold that the trial court in this case, in denying the motion for a new trial on the basis of insufficient evidence, did not abuse its discretion. In its decision, the court first explicitly recognized that the ruling was within its discretion and acknowledged its duty to independently weigh the evidence and assess the credibility of the witnesses. The first prong of the test is therefore met. In denying the motion, the trial court explained:

> [T]here has never been any question that the plaintiffs feel strongly that the fallen power line caused the fire, however, feelings are not the equivalent of facts. Other witnesses who arrived on the scene virtually simultaneously with Todd Lanham describe a blaze elsewhere. They have no reason not to have been truthful. Certainly, the forest service witnesses are no strangers to fire and are unlikely to have had their powers of observation affected by the fact that they were reporting to a fire. No one saw the fire start. Todd Lanham saw the smoke when he returned from work and drove to the area. In order to see the smoke, the fire had to have already been burning. The conflagration which followed may well have obliterated any evidence of the exact cause of the fire but certainly, the plaintiffs made no effort to make an orderly determination of the cause of the fire. Photographs taken shortly after the fire began show a fire in a different area. The plaintiffs had the burden of proof. I cannot say, considering all of the evidence offered at trial, that, by a preponderance of the evidence the fire was caused by any breach of duty by the defendant. When considering a case based on circumstantial evidence it is axiomatic that every fact necessary to support the inference of another fact must be proven. The plaintiffs failed to prove their case. Supposition is not the same as proof. I concur with the jury's verdict in my own independent assessment of the evidence. I see no basis under the law or the evidence to order a new trial.

This passage demonstrates that the court carefully weighed the evidence offered at trial, assessed the credibility of the witnesses, and concluded that the Lanhams failed to meet their burden of proving, in both the negligence and breach of contract actions, that some action on the part of IPC proximately caused the fire. This decision clearly indicates that the court met the second and third prongs of the *Burgess* test and did not abuse its discretion in denying the Lanhams' motion for a new trial.

On appeal, the Lanhams make several arguments regarding the weight to be accorded the testimony offered at trial and the credibility of witnesses. The trial court, however, has broad discretion to make such determinations when ruling on a motion for a new trial. *Quick,* 111 Idaho at 770, 727 P.2d at 1198. The Lanhams first assert that Todd Lanham's testimony that the fire, in its earliest stages, was burning in an area adjacent to the downed power line was uncontroverted. As the trial court noted, though, several uninterested eyewitnesses who arrived on the scene shortly after Mr. Lanham contradicted this testimony. The Lanhams also contend that little or no weight should be accorded the testimony of James Ashby and the Burdens. For us to overturn on this ground the lower court's denial of a new trial, however, we must conclude that the testimony of these witnesses was "entirely worthless." *Pocatello Auto Color,* 127 Idaho at.46, 896 P.2d at 954. We cannot conclude this in the instant case. We therefore hold that the trial court did not abuse its discretion in refusing to grant a new trial under I.R.C.P. 59(a)(6), insufficient evidence to justify the jury verdict.

### C. I.R.C.P. 59(a)(7): Errors of law occurring at trial

The Lanhams first argue that the inclusion of the sentence from *Orthman* in Jury Instruction No. 9 was an error of law. Where a verdict is based on incorrect jury instructions, the appropriate remedy is to order a new trial. *Hook v. B.C. Inv., Inc.,* 125 Idaho 453, 455, 872 P.2d 716, 718 (1994); *Teply v. Lincoln,* 125 Idaho 773, 775, 874 P.2d 584, 586 (Ct.App.1994). We have con-

cluded, however, that the court properly instructed the jury using this instruction. The Lanhams are thus not entitled to a new trial on this basis. The Lanhams also contend that a new trial should have been granted on the basis that the district court committed an error of law in allowing James Ashby to testify at trial. In this case, however, the lower court properly admitted Ashby's testimony. The Lanhams thus do not merit a new trial on this basis. We therefore hold that the lower court properly denied the Lanhams' motion for a new trial under Rule 59(a)(7), errors of law occurring at trial.

### VII.

### ATTORNEY'S FEES

#### A. At trial

IPC based its request for attorney's fees at trial on I.C. § 12–121 and I.R.C.P. 54(e)(1). On appeal, this Court reviews a lower court's denial of attorney's fees for an abuse of discretion. *Thompson v. Pike,* 125 Idaho 897, 901, 876 P.2d 595, 599 (1994).

IPC argues that it was entitled to attorney's fees under *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 803 P.2d 993 (1991). In *Sun Valley,* a fire damaged a shopping center, and the mall's tenants sued IPC, alleging that IPC's negligence caused the fire. The jury returned a verdict in favor of IPC, and IPC moved for an award of costs and attorney's fees. The lower court granted IPC's motion, finding that the plaintiffs' theory of the case was unreasonable and unfounded. *Id.* at 92, 803 P.2d at 998. On appeal, we upheld the trial court's award of attorney's fees, holding that the court's findings were supported by the record. *Id.,* 119 Idaho at 92, 803 P.2d at 998. IPC argues that here, as in *Sun Valley,* the Lanhams' theory of causation was unreasonable and unfounded because they called no experts at trial and based their entire suit on Todd Lanham's testimony. This, IPC contends, is comparable to the situation in *Sun Valley* and likewise justifies an award of attorney's fees.

IPC, however, ignores the central premise of our decision in *Sun Valley.* We

noted there that our function on appeal is not to sit as a fact-finder. *Id.*, 119 Idaho at 92, 803 P.2d at 998. Rather, we are to review the trial court's findings to ascertain whether they are supported by the record. *Id.*, 119 Idaho at 92, 803 P.2d at 998. In the case at bar, the trial court made the following findings:

> There is no question that the plaintiffs' property was damaged by a fire. There were no eyewitnesses who observed how the fire began. The plaintiff, Todd Lanham, was the first to arrive on the scene. His testimony, which was contradicted, supported an assertion that the fire began because a tree fell across the power line. There was considerable testimony about the existence of trees near the easement which could present a fire hazard. Todd Lanham's testimony was contradicted by the testimony of others who were on the scene early on but that does not render the case so "plainly fallacious" that attorney fees should be awarded under I.C. § 12-121. This case presented directly conflicting factual views. While the jury's conclusion is extremely well supported by the evidence, there is not an adequate basis for a conclusion that the case was frivolous or without foundation.

As in *Sun Valley*, substantial evidence in the record supports these findings. We thus hold that the trial court's refusal to award attorney's fees at trial was proper and not an abuse of discretion.

**B. On appeal**

 IPC seeks attorney's fees on appeal pursuant to I.A.R. 41 and I.C. § 12-121. An award of attorney's fees under § 12-121 is proper "only where the Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Thompson*, 125 Idaho at 901, 876 P.2d at 599 (citing *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979)). IPC asserts that, with the exception of the jury instruction argument, the Lanhams' arguments on appeal constitute nothing more than a re-argument of the facts of the case. We find, however, that this case does not merit an award of attorney's fees to IPC. As

IPC admits, the Lanhams' argument regarding the jury instruction was a valid, if not a winning, one. On the whole, the Lanhams presented valid issues on appeal, and we decline to award to IPC attorney's fees on appeal pursuant to I.C. § 12-121.

## VIII.

### CONCLUSION

We hold that the trial court did not err in admitting the testimony of James Ashby at trial or in including the language from *Orthman* in Jury Instruction No. 9. We affirm the trial court's denial of the Lanhams' post-trial motions and IPC's request for attorney's fees. Finally, we decline to award to IPC attorney's fees on appeal. We do award costs on appeal to respondent.

McDEVITT, SILAK and SCHROEDER, JJ., and J. Pro Tem. MAY, concur.