57 P.3d 755

Earl Louis HUNTER and Beverly Rae Hunter, husband and wife, natural parents of Wendy Hunter, deceased, Plaintiffs–Respondents–Cross–Appellants,

v.

STATE of Idaho, DEPARTMENT OF CORRECTIONS, DIVISION OF PROBATION & PAROLE and Division of Field & Community Services, Defendants–Appellants–Cross–Respondents,

and

James C. Lynch, dba Mr. Gas and Mr. Wash; and John and Jane Does I through V, Defendants.

Nos. 26556, 26578.

Supreme Court of Idaho,
Twin Falls, November 2001.

Sept. 13, 2002.

Rehearing Denied Nov. 14, 2002.

Alan G. Lance, Attorney General, Boise; Benoit, Alexander, Sinclair, Harwood & High, LLP, Twin Falls; and Michael G. Brady, Boise, for appellants. Thomas B. High and Michael G. Brady argued.

Kenneth L. Pedersen, Twin Falls, and Seiniger Law Offices, Boise, for respondents. Kenneth L. Pedersen and WM. Breck Seiniger, Jr. argued.

SCHROEDER, Justice.

This is a wrongful death action filed by Louis and Beverly Rae Hunter (the Hunters) against the State of Idaho, Department of

Corrections (the State) and James Lynch, doing business as Mr. Gas and Mr. Wash (Mr. Wash). The Hunters allege that the State and Lynch negligently failed to supervise Corey Hood, who was on probation for rape. Corey Hood murdered the Hunters' daughter, Wendy Hunter (Hunter).

I.

## FACTS AND PROCEDURAL HISTORY

Hood was convicted of statutory rape in Minidoka County on August 29, 1994, following an allegation that he had forcibly raped a child under the age of eighteen. Hood pled guilty to statutory rape and was sentenced to the custody of the Board of Correction for a term of three years. The court retained jurisdiction for 180 days, and Hood was sent to the North Idaho Correctional Institute. He was placed on three years probation after completing that program.

The terms of probation required Hood to remain employed, report to his probation officer, and refrain from intimate relations with anyone under eighteen. Officer Kim Spevak (Spevak) supervised Hood's probation. Spevak had also served as the presentence investigator on Hood's statutory rape conviction and was aware that the 1994 rape could have been a forcible rape. This information was contained in victim's statements in the original police report.

Spevak first met with Hood on April 16, 1995, and asked him to execute a "Sexual Offender Contract" which was not ordered by the district court. Spevak also asked Hood to undergo a sexual offender evaluation in order to determine what risk he posed. Hood never underwent the sexual offender evaluation.

Spevak used the State's Risks and Needs assessment to determine the proper level of supervision for Hood. He was rated at the "maximum" level of supervision. Because of this rating, Spevak was required to meet with Hood face to face twice per month and make one home visit each month. Spevak's notes indicate that she met with Hood in excess of the minimum requirements. Spevak testified that she treated Hood as though he were a forcible rapist.

In August of 1995 Hood began working at Mr. Wash, a car wash in Burley. Spevak confirmed Hood's employment by visiting Mr. Wash and meeting with Hood's supervisor. Spevak informed the supervisor that Hood was on probation for a sexual offense and was not to interact with minors. Spevak did not inform the supervisor of the precise nature of Hood's conviction.

There were no complaints about Hood's conduct at Mr. Wash. Hunter, who was seventeen years old at the time of her death, was also an employee at Mr. Wash. There was testimony that the supervisors at Mr. Wash did not know Hunter's age. Employees at Mr. Wash had observed Hunter talking with Hood on several occasions, but no employees were aware of Hood and Hunter seeing each other outside of their employment. Although employees had seen Hunter "flirting" with Hood, employees testified that Hunter flirted with most male employees at Mr. Wash.

On May 16, 1996, Hood raped and murdered Hunter at his home in Burley. Hunter had quit her job at Mr. Wash six weeks before her murder. The Hunters filed a wrongful death action against the State and Mr. Wash for negligence and negligent supervision of Hood during his probation. The case was tried to a jury. The jury returned a verdict of $1.8 million and apportioned negligence as follows: Earl Hunter, 1%; Wendy Hunter, 4%; Mr. Wash, 20%; the State, 35%; and Hood, 40%. The State and Mr. Wash appeal the district court's denial of their motions for summary judgment, judgment not withstanding the verdict, and motions for a new trial.

II.

## STANDARD OF REVIEW

█ Several orders of the district court are being appealed in this case. The first is the district court's denial of summary judgment. An order denying a motion for summary judgment is not an appealable order itself, nor is it reviewable on appeal from a final judgment. See, for example, *Idaho Power Co. v. Cogeneration Inc.*, 134 Idaho 738, 743, 9 P.3d 1204, 1209 (2000):

Cogeneration asks this Court to determine whether the district court erroneously de-

nied its motion for partial summary judgment. However, an order denying a motion for summary judgment is not a final order and a direct appeal cannot be taken from it. Moreover, an order denying a motion for summary judgment is not to be reviewed on appeal from a final judgment. See *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 376, 973 P.2d 142, 147 (1999); *Watson v. Idaho Falls Consol. Hospitals*, 111 Idaho 44, 46, 720 P.2d 632, 634 (1986); *Evans v. Jensen*, 103 Idaho 937, 941, 655 P.2d 454, 458 (Ct.App.1982). The final judgment in a case can therefore be tested upon the record made at trial, not the record made at the time summary judgment was denied. See *Evans*, 103 Idaho at 942, 655 P.2d at 459.

■ When presented with a judgment notwithstanding the verdict, the district court must uphold the jury verdict if "the court finds that the evidence is of sufficient quantity and probative value that reasonable minds could have reached the same conclusion as did the jury." *Hudson v. Cobbs*, 118 Idaho 474, 478, 797 P.2d 1322, 1326 (1990). The district court must view the facts as if the moving party had admitted the truth of all the non-moving party's evidence, *id.*, and draw every legitimate inference in favor of the non-moving party. *Jones v. Panhandle Distributors, Inc.*, 117 Idaho 750, 752, 792 P.2d 315, 317 (1990). This Court draws all inferences in favor of the nonmoving party to determine if the result is supported by substantial evidence. *Highland Enterprises, Inc. v. Barker*, 133 Idaho 330, 339, 986 P.2d 996, 1005 (1999).

■ The grant or denial of a new trial is within the discretion of the district court. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 497–98, 943 P.2d 912, 923–24 (1997). Because the grant or denial of the motion is discretionary, the district court must (1) act within the outer boundaries of its discretion, consistent with the applicable legal standards; and (2) reach its decision through the exercise of reason. *Lanham*, 130 Idaho at 498, 943 P.2d at 924. This Court reviews a district's court's ruling on a motion for a new trial under the abuse of discretion standard. *Id.*

## III.

## THE PLAINTIFFS WERE NOT REQUIRED TO SHOW THAT THE STATE'S EMPLOYEE ACTED WITHOUT MALICE OR CRIMINAL INTENT AND WITH RECKLESS, WILLFUL, AND WANTON CONDUCT UNDER I.C. § 6–904A

The State argues that the Hunters were required to prove that the State acted with malice or criminal intent and with reckless, willful, and wanton conduct under I.C. § 6–904A in order to establish liability. The district court denied the State's motion for summary judgment on this issue and instructed the jury that the Hunters were required to prove that the State acted either with malice or criminal intent or with reckless, willful and wanton conduct.

Idaho Code § 6–904A states in relevant part that:

> A governmental entity and its employees while acting within the course and scope of their employment and **without malice or criminal intent and without reckless, willful and wanton conduct** as defined in § 6–904C, Idaho Code, **shall not be liable** for any claim which ... (2) arises out of injury to a person ... under supervision, custody, or care of a governmental entity.

I.C. § 9–604C (emphasis added).

The district court ruled at summary judgment that the Hunters were not required to prove both malice or criminal intent and reckless, willful and wanton conduct.

■ The State argues that the word 'and' in the statute requires a plaintiff to prove both factors—malice or criminal intent and reckless conduct. However, the statute requires that the employee act without malice or criminal intent and without reckless, willful and wanton conduct in order to avoid liability—it does not state a plaintiff must show both factors in order to prove liability. Both elements must be absent to avoid liability. It follows, therefore, if it only one element is missing, the State may be liable. In order to avoid liability, the State employee must be acting without malice or criminal

**48**

intent and without reckless, willful, and wanton conduct.

■ A plaintiff, therefore, may prove liability by showing either that the State acted with malice or criminal intent or that the State's action was reckless, willful and wanton. The district court ruled correctly on this issue.

## IV.

### THE STATE IS NOT IMMUNE FROM LIABILITY IN THIS CASE BECAUSE OF DISCRETIONARY FUNCTION IMMUNITY

■ The State argues that the Hunters' theory of negligence changed during the course of the trial in that they offered evidence that the State lacked a standard procedure for informing employers about the nature of a probationer's conviction. The State maintains that a decision to implement such a procedure is discretionary on the State's part and that the State is entitled to discretionary immunity.

The Hunters offered evidence that the State was reckless in several respects—by not obtaining a sexual offender evaluation and by not adequately informing Hood's employer of the nature of his conviction. Spevak testified that she intended to notify Mr. Wash of some aspects of Hood's probation. Therefore, the existence of a policy was not at issue—it was whether notification was recklessly carried out. This was an issue raised in the State's motion for judgment notwithstanding the verdict. I.C. § 6–904 provides in part:

A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:

1. Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

■ "The test for determining the applicability of discretionary function immunity looks at the nature of the conduct." *Brooks v. Logan*, 127 Idaho 484, 488, 903 P.2d 73, 77 (1995). "Routine matters not requiring evaluation of broad policy factors will likely be 'operational,' whereas decisions involving a consideration of the financial, political, economic, and social effects of a particular plan are likely 'discretionary' and will be accorded immunity." *Id.*

In *Brooks* the plaintiffs argued that a school district could be liable in wrongful death for failing to institute a suicide prevention program. *Id.* This Court held that "the decision to implement a suicide prevention program" was a discretionary function entitled to immunity and concluded that the decision on whether or not to implement such a plan should be left to the school districts.

In this case the State argues that the Hunters were allowed to present evidence that the State did not have a policy to send written notification to probationers' employers. The decision to have such a policy, the State argues, is protected by discretionary immunity. However, it is clear that the basis for the Hunters' questioning of Spevak on whether she gave written notice to Mr. Wash does not concern any decisions on whether to have a policy of notifying employers. Spevak consistently testified that she informed Mr. Wash of some aspects of Hood's probation. It is clear that Spevak intended to give some sort of notification to Mr. Wash. The point of the Hunters' evidence was that Spevak could easily have informed Mr. Wash of more details of Hood's conviction. The decisions on which way to notify Mr. Wash and on how much information to give Mr. Wash do not involve consideration of "financial, political, economic, and social effects of a particular plan." The Hunters' evidence goes to the way in which Spevak notified Mr. Wash, which the jury concluded was reckless, willful and wanton. This is not an issue of whether the State should have implemented a policy that was nonexistent at the time. The issue was the way notification took place. The district court decision on this issue is affirmed.

## V.

### THERE IS NOT SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE JURY VERDICT THAT THE STATE WAS RECKLESS, WILLFUL AND WANTON IN ITS SUPERVISION OF COREY HOOD

 In its motion for Judgment NOV the State argues that there is not enough evidence in the record to justify the conclusion that it acted in a reckless, willful or wanton manner.

The question is whether the verdict is supported by substantial evidence. The State contends that the evidence in the record does not support the jury's verdict, and that the State's conduct in this case compares favorably to the conduct in *Harris v. State Dep't of Health and Welfare*, 123 Idaho 295, 847 P.2d 1156 (1992), in which this Court ruled that as a matter of law the State was not reckless, willful and wanton in its conduct.

The phrase "reckless, willful and wanton" is defined in Idaho Code § 6–904C as

present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result.

According to *Harris*, the key element of this definition is knowledge. *Id.* at 299, 847 P.2d at 1160. This element of knowledge implies an element of foreseeability. *Id.*

This foreseeability, as applied to this case, contemplates more than the mere possibility of aggressive tendencies harbored by the state's ward. The concept of foreseeability is much more narrowly drawn in this circumstance. The specific harm ... must be manifest or ostensible, and highly likely to occur. To hold otherwise would impose a debilitating burden on the state, requiring it to infer the highest social risk from a ward's minimal antisocial behavior, against which it would have the unequivocal duty to protect the public.

 *Id.* However, "[t]he question whether a risk of harm is foreseeable is generally a question for the trier of fact." *Caldwell v. Idaho Youth Ranch*, 132 Idaho 120, 125, 968 P.2d 215, 220 (1998).

In the *Harris* case the state's ward was a juvenile under the care of the Department of Welfare. The juvenile had records of petit theft and misdemeanor battery. Evaluations done on the juvenile indicated that he might pose an above average sexual threat to his female peers. *Harris*, 123 Idaho at 297, 847 P.2d at 1158 (emphasis added). The Department later lost touch with the juvenile and unsuccessfully tried to recontact him. During this time, the juvenile raped Harris, an elderly widow. *Id.*

*Harris* was an appeal from a grant of summary judgment in favor of the Department, and this Court held that the Department was not liable, stating that there was no evidence in the record that any state employee "intentionally and knowingly did or failed to do any act which created an unreasonable risk of harm to Harris. Specifically, no act or omission of the employees involved a high degree of probability that the kind of harm which Harris suffered would result therefrom." *Id.* at 299, 847 P.2d at 1160. Further, the Court stated that,

"[n]or can the Department's failure to act with greater dispatch be considered reckless, willful or wanton because nothing in [the juvenile's] antecedent behavior or present comportment presaged the vicious exploits committed against Harris such that a reasonable person could foresee the need to restrain [the juvenile] from society. The most drastic prediction recorded was that [the juvenile] might be an above average sexual risk to his female peers, which Harris was not."

*Id.*

In *Farnworth v. Ratliff*, 134 Idaho 237, 999 P.2d 892 (2000), Farnworth sought damages for injuries sustained after an altercation with a fellow inmate while incarcerated. The suit was not filed until after the statute of limitations ran. Farnworth then sued his lawyer. On summary judgment, the district court noted that Farnworth would have to show that he would have had some chance to prevail on the underlying action. *Id.*

Farnworth argued that because the officers involved knew that the inmate had been involved in an attack on an inmate, it was foreseeable that he might attack Farnworth.

This Court stated that "the type of foreseeability the *Harris* standard envisions is much narrower than the 'mere possibility of aggressive tendencies harbored by the state's ward.' The officers must have known, or had reason to know, Schwin's attack on another inmate was highly likely to occur." *Id.* at 240, 999 P.2d at 895. This was a summary judgment case, but it is noteworthy that the Court held that even a prior incident of similar conduct did not demonstrate that another attack was "highly likely to occur." *Id.*

 Under the *Harris* and *Farnworth* standard "[t]he specific harm ... must be manifest or ostensible, and highly likely to occur." *Harris* at 299, 847 P.2d at 1160. The specific harm in this case is murder. Although the State considered Hood a forcible rapist and reasonable minds might find that he was a threat to commit rape again, that does not meet the "specific harm" requirement set forth in *Harris*.

The State's witness, Dr. Mario Paparozzi, admitted that people can get killed during rape. This generalized statement does not establish a high likelihood that Hood would murder. Hood successfully completed a retained jurisdiction program and had been placed on probation by a district judge who was fully informed of Hood's background. Certainly probation would not have been allowed had there been a foreseeability of a high likelihood Hood would murder. Nothing occurred during the probation prior to the killing that would lead to a different conclusion than that he could successfully complete probation.

## VI.

## THE CLAIM OF NEGLIGENCE SHOULD NOT HAVE BEEN SUBMITTED TO THE JURY

 Mr. Wash argues that it owed no duty to Hunter at the time she was murdered. She was not employed by Mr. Wash at that time, and the event did not occur in connection with work.

 "Idaho follows the general rule that, absent special circumstances, one does not have a duty to control the conduct of another." *Turpen v. Granieri*, 133 Idaho 244, 248, 985 P.2d 669, 673 (1999). In *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137

(1980), this Court held that "one owes the duty to every person in our society to use reasonable care to avoid injury to the other person *in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury*" (quoting *Kirby v. Sonville*, 594 P.2d 818, 821 (Or.1979)) (attention in original). This is the common law duty rule. (Citation omitted).

*Alegria* involved a suit against bartenders who served an obviously intoxicated minor liquor. The minor then killed a woman in an automobile accident. The theory of the case was that the bartenders had acted affirmatively; they served the minor before he got in his automobile.

*Doe v. Garcia*, 131 Idaho 578, 961 P.2d 1181 (1999), had within its issues a claim of negligent supervision. The plaintiffs asserted that St. Alphonsus Hospital negligently allowed Garcia to form a relationship with Doe which later led to a case of sexual abuse. Had the Hospital inquired into Garcia's work history, the plaintiffs argued, the Hospital would have known that Garcia posed a risk to the patients. The affirmative act complained of was the hiring of Garcia, which proximately caused the plaintiff's injury. The decision in *Doe v. Garcia*, was on a motion for summary judgment, determining that there was a material fact in dispute which precluded summary judgment. In this case the facts were fully developed at trial.

Submitting the case to the jury was consistent with *Doe v. Garcia*, but that case and this case extend the duty of an employer too far for consequences outside employment over which the employer has no realistic control. Hood would not have completed the retained jurisdiction at the North Idaho Correctional Institution if the staff at the institution could have foreseen that he would murder. The judge who placed Hood on probation did not see a probability that Hood would murder. The probation officer who supervised him did not foresee such a consequence. Imposing a duty on Mr. Wash to anticipate what bad consequences might result from placing Hood where he would have contact with a minor girl reaches too far.

The verdict in this case exemplifies the results that may occur when employers are

called upon to foresee the conduct of their employees off the job. Mr. Wash was found to have half as much responsibility for Hunter's death as Hood who actually killed her. That defies common sense. The man who actually killed Hunter had virtually all, if not all the responsibility for her death. Finding otherwise illustrates the hazards of putting an emotionally charged issue to an understandably sympathetic jury.

Mr. Wash had no duty that extended to this tragic event.

## VII.

## OBJECTIONS TO EVIDENCE CONTAINED IN POLICE REPORTS WAS NOT PRESERVED FOR APPEAL

The district court ruled that the police report could not be admitted into evidence. However, the Hunters were allowed to describe contents of the police report when questioning Spevak about whether she regarded Hood as a "forcible rapist." According to the State, the use of the term "forcible rapist," when Hood had only been convicted of statutory rape, prejudiced the jury.

 The district court held that the State did not object to the introduction of any evidence from the police report, and therefore the argument was waived. The State did not present evidence of its objections at the district court level. This issue was not preserved for appeal.

## VIII.

## THE CLAIM OF A RIGHT TO A NEW TRIAL BASED ON JURY MISCONDUCT IS MOOT

A juror wrote a letter to a newspaper during the trial that was not published until the trial concluded. The letter expressed sympathy for the plaintiffs and its publication raised the question of whether the juror prejudged the case. This issue is moot.

## IX.

## REMAINING ISSUES

The remaining issues that the appellants have raised are moot as a consequence of the Court's rulings.

## X.

## CONCLUSION

The judgment entered in the district court is reversed. The State and Mr. Wash are awarded costs. No attorney fees are allowed.

Chief Justice TROUT, Justices WALTERS and EISMANN concur.

Justice KIDWELL, Concurring in part and Dissenting in part III.

The majority's opinion interprets "and" to mean "either"; I believe "and" means "and." The Hunters should have been required to prove both elements as required by the use of the word "and" in I.C. § 6–904A. If the legislature intended for plaintiffs to prove only one of the elements, then it would have used the word "or" in I.C. § 6–904A.

In relevant part, I.C. § 6–904A states, "a governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent *and* without reckless, willful and wanton conduct as defined in section 6–904C, Idaho Code, shall not be liable for any claim...." (Emphasis added).

Statutory interpretation is a question of law over which this Court exercises free review. *State v. Quick Transport, Inc.,* 134 Idaho 240, 244, 999 P.2d 895, 899 (2000). Statutory interpretation begins with the plain meaning of the statute. *State v. United States,* 134 Idaho 940, 944, 12 P.3d 1284, 1288 (2000). If the statutory language is clear and unambiguous, this Court need merely apply the statute without engaging in statutory interpretation. *State v. Hagerman Water Right Owners, Inc.,* 130 Idaho 727, 732, 947 P.2d 400, 405 (1997). When interpreting a statute, words should be given their usual and accepted meaning. *In re Guardianship of Copenhaver,* 124 Idaho 888, 893, 865 P.2d 979, 984 (1993). Based on the plain meaning of the language of I.C. § 6–904A, I would find that the district court erred in its ruling on this issue.