986 P.2d 996

HIGHLAND ENTERPRISES, INC.,
Plaintiff–Respondent,

v.

Billy Jo BARKER, Robert Borden, Heather Briggs, Lawrence Juniper, John Kreilick, Peggy Sue McRae, Karen Pickett, Jennifer Lynn Prichard, Peter Leusch, Erik Ryberg, Michael Vernon and Dana Wright, Defendants–Appellants.

No. 23931.

Supreme Court of Idaho,
Boise, April 1999 Term.

Aug. 27, 1999.

D. Bernard Zaleha, Boise; Kenneth S. Gallant, Moscow, for appellants. Kenneth S. Gallant argued for appellant Jennifer Lynn Prichard. D. Bernard Zaleha argued for remaining appellants.

Clark & Feeney, Lewiston, for respondent. Ronald T. Blewett argued.

TROUT, Chief Justice.

This is an appeal from a judgment entered after a jury found several members of the Earth First! organization (defendants or appellants) liable for interference with the prospective economic advantage of the respondent, Highland Enterprises, Inc. (Highland). The appellants were assessed compensatory and punitive damages. Appellants appeal from an order denying various post-verdict motions.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Earth First! is an association which promotes environmentalism and protests against activities that the association's members determine to be anti-environment. The association has a publication, *Earth First! Journal*, published every six weeks, to which members may subscribe. There is also a regional chapter of Earth First!, Wild Rockies Earth First!, which was formed in 1987 by appellant John Kreilick (Kreilick). Wild Rockies Earth First! is based in Montana and includes within its scope the interests of the Northern Rockies. A quarterly newsletter of Wild Rockies Earth First!, *The Wild Rockies Review*, is an insert in the *Earth First! Journal*. The members of Earth First! are encouraged, at meetings and through the journals, to engage in protest activities including "direct action." Direct action involves non-violent protest of road building and timber harvesting such as burying people in the road, erecting tripods in the road and sitting in the tripod, and chaining people to equipment and gates in order to block work. At trial, the parties disputed whether the Earth First! publications also encouraged protesting through "monkeywrenching," which includes vandalism, tree-spiking and damaging equipment. The relevance at trial of various articles addressing monkeywrenching is at issue in this appeal.

In the early 1990s, Highland contracted with Shearer Lumber to perform forest road building near Dixie, Idaho, as part of the Cove/Mallard timber sales. The U.S. Forest Service sold the timber from these sales to Shearer Lumber. In the spring of 1992, Kreilick went to the annual Earth First! Rendezvous and discussed with Robert Amon (Amon) [1] a Cove/Mallard protest campaign to protest the road building and the timber sales. In a discussion circle devoted to Cove/Mallard issues, Amon, Kreilick and others discussed the logistics of the Cove/Mallard protest campaign addressing such issues as food, transportation, camping and the types of protest activities that would occur.

The Cove/Mallard campaign was first publicized in the Spring 1992 edition of the *Earth First! Journal*. The main organizers of the 1992 campaign included Kreilick, Amon, Erik Ryberg (Ryberg) and Billy Jo Barker (Barker). Ryberg obtained a Forest Service camping permit for July and August of 1992 and various protestors set up camp about ten miles from Highland's road construction. Protest activities occurring in 1992 included tree-sitting, pole-sitting, digging holes in the road, chaining protesters to construction equipment, damaging roads and tree-spiking. At trial, evidence of monkeywrenching in the form of road damage and tree-spiking was presented through circumstantial evidence. The trial court character-

---

1. Amon testified through deposition at the trial. Amon appears to have been one of the key players in various protests that occurred, having provided land, food and transportation to those who participated in the protests. However, prior to trial, Amon filed for bankruptcy and was not a defendant to the action pursuant to a stay issued by a U.S. Bankruptcy Judge.

ized the 1992 protests as "disorganized and relatively small in scale."

The 1993 campaign was larger in scale and better organized. The main organizers of the 1993 campaign included Kreilick, Amon, Ryberg, Barker and Karen Pickett (Pickett). By the spring of 1993, Amon had purchased twenty acres of land near the Cove/Mallard roads to serve as a base camp for the protesters. In May of 1993, Kreilick and Pickett set up camp on Amon's land and on Memorial Day, the Wild Rockies Earth First! Rendezvous took place at the camp. Protestors Kreilick, Amon, Phil Knight (Knight) and Pickett had also engaged in fund raising that year which resulted in the receipt of $20,000. Amon provided food at the camp, but supplies were paid for by the money brought in through fund raising. Monies forwarded to Amon by Pickett[2] for the 1993 Cove/Mallard campaign were deposited into Amon's "Ancient Forest Bus Brigade" account.

Evidence was presented at trial that through the *Earth First! Journal* and letters, people were encouraged to come to the base camp and protest or, alternatively, to send supplies and/or money for the campaign. Potential protesters were told that their nutritional needs would be cared for while at the camp. Testimony at trial also explained that decisions for the Cove/Mallard campaign were made through "consensus circles", a decision making process which required that before a decision was implemented, everyone must agree. Anyone identified as having been at the Cove/Mallard camp in 1993 would have attended any number of consensus circles. However, testimony from Ryberg was that the consensus circles rarely resolved anything at Cove/Mallard.

On June 22, 1993, the Forest Service entered a Closure Order restricting public access to the Noble Creek area of Cove/Mallard where the roads were being built by Highland. On June 30, 1993, the following Earth First! activists were arrested: Barker (buried in the road); Kreilick (buried in the road); Michael Vernon (Vernon) and Lawrence Juniper (Juniper) (legal observation and support); Peter Leusch (Leusch) and Beatrix Jenness (Jenness) (interfering with

Highland's efforts to remove slash piles from the road); and Jennifer Prichard (Prichard) (chained to access gate). Amon was also arrested for protest activities. All had convictions entered pursuant to Rule 11 agreements.

On July 15, 1993, the following persons were arrested by the Idaho County Sheriff's Department: Peggy Sue McRae (McRae) (tripod sitting); Robert Borden (Borden) (tripod sitting); Dana Wright (Wright) (buried in the road); Barker (buried in the road); Kreilick (buried in the road). They too were convicted for their activities.

Throughout the summer, activists attached themselves to Forest Services vehicles. Additionally, Highland employees and Forest Service agents testified that they found spiked trees, boards in the road with nails protruding, damaged construction equipment, sharpened rebar in the road, missing survey stakes, Earth First! slogans spray-painted on concrete road barriers, and slash piles in the road. A search of Amon's property on June 30, 1993, revealed barrels of climbing rope, climbing harnesses and spikes, tree-sitting platforms, an Earth First! banner, two buckets of nails of the type found in the road, digging tools and green spray-paint cans.

In August of 1993, Highland filed suit against a number of entities, associations and individuals, including 200 Jane and John Does, for conversion, intentional destruction of property and trespass, interference with contract and racketeering based on the protest activities that occurred in 1993. Default judgments were entered against a number of defendants, while the following defendants defended the suit: Barker, Borden, Jenness, Juniper, Kreilick, Leusch, McRae, Pickett, Prichard, Vernon, Wright and Ryberg. A number of defendants counterclaimed alleging abuse of process. Prior to the jury reaching a verdict, the trial court granted Highland's motion for a directed verdict on the counterclaims.

On September 13, 1996, the trial court ruled on various pre-trial motions. The

---

**2.** Pickett was not at the camp during the summer of 1993.

court permitted amendment of Highland's complaint to add a claim for punitive damages, ruled that both parties would have an equal number of peremptory challenges and denied summary judgment in favor of the defendants.

The jury trial began on October 15, 1996 and ended on October 30, 1996. Highland presented only one cause of action: intentional interference with an economic advantage. The jury found that the appellants were liable to Highland for a total of $150,000 in compensatory damages and $999,996 in punitive damages. The jury returned verdicts against each defendant separately and divided the damages in the following manner: Defendants Barker, Kreilick, Leusch, McRae, Pickett, Prichard and Ryberg were each assessed compensatory damages in the amount of $16,667; Defendants Borden, Jenness, Juniper, Vernon and Wright were each assessed compensatory damages in the amount of $8,333; and each defendant was assessed punitive damages in the amount of $83,333.

On November 15, 1996, the defendants filed a motion for new trial, remittitur, and judgment notwithstanding the verdict (JNOV). On May 27, 1997, the trial court ruled against the defendants on all issues, denying the motions.

## II.

## MOTION FOR JNOV

### A. Standard of review

■ The issue to be determined on a motion for (JNOV) is whether substantial evidence supports the jury's verdict. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 495, 943 P.2d 912, 921 (1997). "Substantial evidence" does not require that the evidence be uncontradicted. Rather, the evidence need only be "of a sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper." *Id.* at 495–96, 943 P.2d at 921–22 (quoting *Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643, 658, 827 P.2d 656, 671 (1992)). Upon a motion for JNOV, the moving party admits the truth of all adverse evidence and all inferences that can legiti-

mately be drawn from it. *Id.* In ruling on a JNOV, the court cannot weigh the evidence, assess the credibility of witnesses, or make its own factual findings and compare them to those of the jury. *Id.* The court draws all inferences in favor of the non-moving party. *Id.* The motion should be granted only where "there can be but one conclusion as to the verdict that reasonable minds could have reached and when that conclusion does not conform to the jury verdict." *Id.* (quoting *Watson*, 121 Idaho at 659, 827 P.2d at 672) (citations omitted)). The function of a JNOV is to give the trial court the last opportunity to order the judgment that the law requires. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986).

■ On appeal, this Court applies the same standard as the trial court in ruling on the motion and does not defer to the lower court's views. *Id; Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 127 Idaho 41, 45, 896 P.2d 949, 953 (1995). The Court reviews the record and draws all inferences in favor of the non-moving party, in this case, Highland. *Lanham*, 130 Idaho at 496, 943 P.2d at 922. Where the evidence conflicts, the Court must construe the evidence in favor of the jury verdict. *Id.*

### B. Substantial evidence exists that the appellants knew of Highland's business opportunity and intended to terminate Highland's economic expectancy.

The appellants assert that Highland failed to prove by substantial evidence the knowledge and intent elements of intentional interference with a prospective economic advantage. At the end of the trial, the trial court properly instructed the jury with regard to the interference claim in the following manner:

1. In or about the summer of 1993, near Dixie, Idaho;

2. Highland Enterprises, Inc. had a lawful opportunity to gain an economic advantage (make a profit) by building roads;

3. The defendant knew of the existence of this opportunity of Highland Enterprises, Inc;

4. The defendant intended to, and did, interfere with Highland Enterprises' performance causing Highland's performance to become more expensive or burdensome;

5. The defendant's interference was wrongful in that the defendant had the improper motive to harm the plaintiff or that the defendant used wrongful means to cause injury;

6. Injury to the plaintiff resulting from an intentional interference;

7. The nature and extent of the damages to the plaintiff and the amount thereof.

■ Idaho recognized the tort of interference with a prospective economic advantage in *Idaho First National Bank v. Bliss Valley Foods*, 121 Idaho 266, 284–85, 824 P.2d 841, 859–60 (1991). In adopting the cause of action, this Court stated that we agreed with the way in which the tort had been discussed by the Washington Supreme Court in *Pleas v. City of Seattle*, 112 Wash.2d 794, 774 P.2d 1158 (1989) and the Oregon Supreme Court in *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365 (1978) and adopted the tort as outlined in those cases. Although in *Bliss* we did not precisely state each element of the tort and instead, focused mainly on the type of wrongful conduct necessary to establish a claim, our reference in *Bliss* to *Barlow v. International Harvester, Co.*, 95 Idaho 881, 522 P.2d 1102 (1974), a case involving a nearly identical tort, interference with contract, combined with *Pleas* and *Top Service*, provides a clear picture of the elements of the tort of intentional interference with a prospective economic advantage. Those elements are as follows: 1) The existence of a valid economic expectancy; 2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful

by some measure beyond the fact of the interference itself (i.e. that the defendant interfered for an improper purpose or improper means) and (5) resulting damage to the plaintiff whose expectancy has been disrupted. See *Bliss*, 121 Idaho at 285–86, 824 P.2d at 859–60; *Barlow*, 95 Idaho at 893, 522 P.2d at 1114; *Pleas*, 774 P.2d at 1161–63.

### 1. Substantial evidence exists that the appellants knew of Highland's economic advantage.

The appellants argue on appeal that Highland failed to prove that they had knowledge of Highland's prospective economic advantage. Specifically, the appellants assert that Idaho law requires the appellants to have had actual knowledge of Highland's subcontract to build the road, Highland's ability to make money from the road building, and of the financial harm their acts would cause Highland. Indeed, appellants argue that it is equally as plausible that the appellants thought the delay would increase Highland's profits based on an assumption that Highland was being paid hourly, as it is that they knew they were harming Highland through any delay.

■ Based on *Bliss* and *Barlow*, the appellants assert that Idaho law requires that actual knowledge be proven. *Bliss* makes no statement regarding the type of knowledge necessary to make a claim of intentional interference with economic advantage. Similarly, *Barlow*[3] does not address or explain the element of knowledge. In fact, the Restatement and case law from other jurisdictions illustrate that the proper standard is not actual knowledge. Rather, the knowledge element is "satisfied by actual knowledge of the prospective [economic advantage] or by knowledge *'of facts which would lead a reasonable person to believe that such inter-*

---

**3.** When addressing the various elements of intentional interference with a prospective economic advantage, it is important to note that the torts of intentional interference with a prospective economic advantage and intentional interference with contract are very similar, differing only in the type of economic relationship with which the defendant has interfered. Indeed, the *Bliss* Court's reliance on *Barlow*, an intentional interference with contract case, makes this clear. Ac-

cordingly, cases and commentary addressing the two torts often apply interchangeably the standards for proving the common elements. The RESTATEMENT (SECOND) OF TORTS also makes clear that the actions are nearly identical. *See* RESTATEMENT (SECOND) OF TORTS § 766B cmt. d (1977) (Intentional Interference with Prospective Contractual Relation cross referencing to section on Intentional Interference with Performance of Contract for element of intent).

*est exists.'"* *Kutcher v. Zimmerman,* 87 Hawai'i 394, 957 P.2d 1076, 1088 n. 16 (App. 1998) (quoting W.P. Keeton, D.Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 129, at 982 (5th ed.1984)) (emphasis added). The second Restatement states that:

> it is not necessary that the actor appreciate the legal significance of the facts giving rise to the contractual duty.... If he knows those facts, he is subject to liability even though he is mistaken as to their legal significance and believes that the agreement ... has a different legal effect from what it is judicially held to have.

RESTATEMENT (SECOND) OF TORTS, § 766 cmt. I (1977).

■ Given, then, that proof of actual knowledge is not the standard, the issue is whether there was substantial evidence that the appellants had knowledge of facts which would lead a reasonable person to believe that the economic advantage existed. Evidence showed that each of the appellants had been identified as a member of Earth First!. The articles in evidence demonstrated that the purpose of the protest was to prevent continuation of the road building. For example, exhibit 80 states "[i]t's gonna take them about 5 more years to punch in the full 145 miles of NEW roads that they have on the drawing boards, and we're gonna make 'em pay for every foot." Exhibit 68 states that "[t]he areas to be roaded is perfect old-growth corridor land.... Also, Wild Rockies ER!ers feel strongly that our mere presence here is acting as a deterrent.... We need as many people as possible throughout the season to maintain the blockade, so show up in droves." Exhibit 75 states "With a handful of activists last year we cost them a whopping $260,000! Think what we can do with hundreds and hundreds of us." Kreilick admitted to knowing that the protest cost Highland money and Barker and Ryberg had been informed by Don Blewett in 1992 that damage to the equipment would not hurt the mill or the Forest Service, but only Highland. Kreilick and Barker told a Forest Service agent in 1992 that they were going to stop the road construction. Notably, the appellants do not argue that Kreilick did not

have knowledge of the economic advantage, because indeed, he stated he believed that the demonstrations caused Highland to lose money.

Also presented at trial was evidence of consensus circles and the communal nature of the campaign. Decisions for the Cove/Mallard campaign were made through consensus circles and *Earth First! Journal* articles are also published by consensus agreement. Also, there was testimony at trial that anyone identified as having been at the Cove/Mallard camp would have attended various consensus circles. Although Ryberg testified that the consensus circles rarely resolved anything at Cove/Mallard, where conflicting, we must construe the evidence in favor of the jury's verdict. *Lanham,* 130 Idaho at 496, 943 P.2d at 922. Additionally, although Pickett was not at Cove/Mallard during the summer of 1993, she is directly linked by a solicitation letter written by her encouraging people to go to the camp in 1993.

Thus, under the standard for review of JNOV motions, where the moving party admits the truth of all the adverse evidence and all inferences that can legitimately be drawn from it; the Court cannot weigh the evidence, assess the credibility of witnesses, or make its own factual findings and compare them to those of the jury; and the Court must draw all inferences in favor of the non-moving party, we conclude that the knowledge element has been met by substantial evidence. At least three appellants knew that protest activities would economically harm the persons involved with building the road. The appellants operated in a concerted, group effort to sabotage the road building. It is a reasonable inference that through communication with one another, all protesters were aware that their activities would hinder the economic advantage of Highland. Although the appellants argue that there was no direct evidence that all of the appellants attended any of the consensus circles during which direct action against the road building was discussed, our standard of review requires this Court to draw all inferences in favor of Highland.

Last, the fact that the appellants may have incorrectly understood the nature of the contract does not prohibit a finding that they had the necessary knowledge for the cause of action. The appellants need not have appreciated the legal significance of the facts giving rise to the economic advantage. Liability exists even if the tortfeasor believes the agreement has a different legal effect from what it is judicially held to have. *See* RESTATEMENT (SECOND) OF TORTS § 766 cmt. I (1977); *Aylett v. Universal Frozen Foods Co.*, 124 Or.App. 146, 861 P.2d 375, 380 (1993) (arguing that in *Top Service*, the court never stated that to prove a claim for tortious inference there *must* be evidence that the defendant intended to injure the plaintiff, as opposed to anyone else). Therefore, even if the appellants believed that they were not causing Highland to lose money, a reasonable inference is that they had knowledge of facts that would lead a reasonable person to understand that an expectancy existed and that their actions would delay and economically harm some entity. It is not necessary that they knew it was Highland and not some other entity losing the economic advantage.

2. *Substantial evidence exists that the appellants intended to terminate Highland's prospective economic advantage.*

The appellants argue that even if it could be proven that they knew of Highland's economic advantage, there is not substantial evidence that they intended to harm Highland or knew that their acts would have such an effect, because, as stated above, the appellants thought they were increasing Highland's profits by causing the delay. Appellants also argue that to conclude such an intent existed, the jury could only have drawn that inference from an improper inference that appellants knew of Highland's economic opportunity.

In proving the element of intent, the plaintiff may show that the interference "with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." RESTATE-MENT (SECOND) OF TORTS § 766B ctm. d (1977). Intent can be shown even if the interference is incidental to the actor's intended purpose and desire "but known to him to be a necessary consequence of his action." *Id.* at § 766 cmt. j.

The trial court correctly noted that, "[w]hat motivates a person to act seldom is susceptible of direct proof." *Kalgaard v. Lindo Mar Adventure Club, Ltd.*, 147 Or. App. 61, 934 P.2d 637, 640 (1997) (addressing whether the lower court should have granted summary judgment for a claim of tortious interference with a potential business relationship). A California case addressing the intentional tort of interference with contract (and noting that intentional interference with contract and intentional interference with economic advantage do not differ with regard to intent) held that "[i]ntent, of course, may be established by inference as well as by direct proof." *Savage v. Pacific Gas & Electric Co.*, 21 Cal.App.4th 434, 26 Cal.Rptr.2d 305, 314 (1993) (quoting *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158, 1165 (1984)). Accordingly, the jury may infer culpable intent from conduct substantially certain to interfere with the prospective economic relationship. *Id.*

Based on the standard of review this Court gives to motions for JNOV, the evidence set forth above which supports that the appellants had knowledge of Highland's economic advantage also supports that the appellants intended to interfere with that advantage. Testimony and evidence at trial made clear that the purpose of the protest was to stop the road building. And although at least one defendant, Kreilick, testified that "the intention was not to deprive Highland of, you know, a major portion of their economic activities," he also stated that he realized the Earth First! activities also affected Highland even though Highland was not the direct target. It is reasonable to infer from the evidence of the appellants' conduct presented at trial that the conduct was substantially certain to interfere with an economic advantage. The substantially certain aspect of appellants' conduct allows a finding of intent. Even more, regardless of the asser-

tion that Highland was not the intended target of their activities and saving the trees was the ultimate objective, intent can be shown even if the interference is incidental to the actor's intended purpose and desire, but known to him to be a necessary consequence of his action. A reasonable conclusion from the appellants' activities is that even if they intended only to harm the Forest Service and preserve the Cove/Mallard area, a necessary consequence of their actions would be that those constructing the roads would suffer financially.

Accordingly, we uphold the district court's denial of appellants' motion for JNOV with regard to appellants' knowledge and intent arguments holding that substantial evidence supports the jury's verdict.

## C. Substantial evidence exists to support the award of damages.

### 1. Procedural issues

First, we must address the procedural difficulties involved in the appellants' issues regarding damages. On appeal, the appellants present argument on damages and focus on the sufficiency of the evidence to support the damage award. However, the case law cited by appellants, *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979), addresses damages under the standard of an I.R.C.P. 59(a)(5) motion for a new trial, excessive damages appearing to have been given under the influence of passion or prejudice. Additionally, the appellants' brief requests a variety of relief, asking for a new trial for some appellants, a JNOV for others, and, in addition, a remittitur. The appellants' argument on damages is, at the very least, muddled. The presentation to the trial court on the post-trial motions faired no better. Indeed, the original motion to the trial court requested a JNOV on the basis that there was insufficient evidence to justify the verdict. No motion was made for a new trial on the basis of excessive damages. In their brief to the trial court, the appellants, in much the same way they did on appeal, meshed together the motions addressing damages. The appellants addressed the insufficiency of the evidence to justify the damages as a subissue under the heading "Errors in Law Requiring a New Trial." The case law cited dealt with motions for a new trial on the basis of excessive damages and their request for relief was a combination of a new trial and a directed verdict, by which, we assume, they intended to request a JNOV. Moreover, the appellants' argument focused almost solely on appellant Prichard, mentioning the "defendants" only twice. For example, the appellants wrote in their brief to the lower court:

> Considering that Defendant Jennifer Lynn Prichard was ordered to pay only $265.65 in restitution for this single act [chaining herself to a fence and trespassing], the jury award of $16,667 in compensatory damages, and $83,333 in punitive damages, is so excessive, it could only have been a product of jury passion or prejudice, thus necessitating the court to set aside the verdict entered in the above-entitled action and enter judgment in accordance with Defendants' motion for directed verdict, or in the alternative, remit the damages.

As a result of the presentation of the issue, the trial court, quite reasonably, determined that the defendants had not argued the issue of damages in the context of a motion for JNOV. Nevertheless, the trial court proceeded to rule on the issue. The trial court stated:

> The defendants did not argue this aspect of their motion in their brief or at the hearing. They did argue damages in the context of a motion for a new trial, which the Court will address later in this opinion. Based on the record and expert testimony on damages, the Court finds no basis for overturning the verdicts based on the amount of damages. Plaintiff presented evidence of damaged equipment and extensive delays which caused it to lose a substantial amount of money.

When the trial court addressed the issue of damages under the standard for a motion for a new trial, the court determined whether the damages were excessive for appellant Prichard only.

 As this Court has stated numerous times, we cannot consider issues which were not raised before the trial court. *Schiewe v. Farwell*, 125 Idaho 46, 49, 867

P.2d 920, 923 (1993). After examining the record below, the trial court's order, and the appellants' brief to this Court, we conclude that the issue regarding sufficiency of the evidence to support the damage award was raised in their motion for JNOV by all appellants and ruled on by the trial court. However, whether a new trial was warranted because the damages were excessive was only raised and ruled on by the trial court with respect to appellant Prichard. Thus, our examination of the issues will proceed on that basis.

### 2. Damages

 appellants argue that the evidence was insufficient to tie the appellants to most of the damages. Specifically, they argue that there was no direct evidence linking the appellants to the exact amount of damages that each was assessed, that most of the defendants committed no acts that could be construed as aiding and abetting any of the tortious activity, and that the actions of those defendants that may have aided and abetted did not cause any tortious activity.

We believe that substantial evidence exists to support the jury's award of damages. On a motion for JNOV, the evidence need only be of a sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper. Moreover, we are required to draw all inferences in favor of the non-moving party. In this case, there was substantial evidence presented by Highland regarding the amount of damages it suffered due to the delay caused by the appellants. There was substantial evidence presented that each of the appellants actively opposed the road-building, were present at the camp that summer or, in the case of Karen Pickett, actively worked to facilitate the presence and activities of those who were present and working towards stopping Highland's construction. It is not unreasonable for the jury to have concluded that a group of people working together to stop the road-building aided one another through moral and physical support or direct solicitation and collectively damaged Highland in the amounts assessed against the appellants.

From that, it is reasonable for the jury to then determine the responsibility attributable to each appellant through a separate damage award against each one. A person is subject to liability if he or she does a tortious act in concert with the other or pursuant to a common design with him. *See* RESTATEMENT (SECOND) OF TORTS § 876(a) (1977). The subsequent determination of the jury assessing separate damage awards against the defendants was similar to that of negligence cases where there are multiple tortfeasors and the jury is asked to determine the amount of damages or comparative responsibility attributable to each party. *See* I.C. § 6-802 (1998). Drawing all inferences in favor of Highland that the appellants acted in concert to cause the damage Highland suffered, substantial evidence existed to support the separate damage awards against the appellants.

 In addition, substantial evidence existed to support the award of punitive damages. Again, drawing all inferences in favor of Highland, the jury had before it evidence that the appellants had acted in a manner that was an extreme deviation from reasonable standards of conduct. The appellants consistently delayed Highland's work through malicious and outrageous conduct. For example, among other acts, the appellants damaged equipment, spiked trees and placed boards in the road with nails protruding. Drawing all inferences in favor of Highland, we conclude there was substantial evidence supporting the punitive damage award.

In sum, we affirm the trial court's denial of the appellants' JNOV motion with respect to damages.

### III.

### MOTION FOR A NEW TRIAL

### A. Standard of Review

 Motions for a new trial are governed by I.R.C.P. 59(a). On appeal, the Court reviews a trial court's decision to grant or deny a new trial for an abuse of discretion and that decision will not be disturbed absent a *manifest* abuse of discretion. *Lanham,* 130 Idaho 486, 497–98, 943 P.2d 912, 923–24

(1997) (emphasis in original). The test for determining abuse of discretion consists of the following three-part inquiry: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc., v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). When reviewing the trial court's decision, the Court considers the grounds upon which the lower court based its decision to grant or deny the motion. *Lanham,* 130 Idaho at 498, 943 P.2d at 924. "The trial court is in a far better position to weigh the demeanor, credibility, and testimony of witnesses, and the persuasiveness of all the evidence." *Quick v. Crane,* 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986). The Court must review the evidence, but is not in a position to weigh the evidence. *Id.*

**B. The trial court properly denied the appellants' request for an affirmative defense jury instruction.**

Motions for a new trial are governed by I.R.C.P. 59(a) and can be granted on one of the many bases set forth in the Rule. By asserting that the trial court erred in barring the submission of an affirmative defense instruction to the jury, the appellants assert that there has been an error in law occurring at the trial. I.R.C.P. 59(a)(7).

When reviewing jury instructions on appeal, the Court is guided by several well-established general rules of construction. On appeal, the review of jury instructions is generally limited to a determination of whether the instructions, when considered as a whole and not individually, fairly and adequately present the issues and state the applicable law. *Sherwood v. Carter,* 119 Idaho 246, 256, 805 P.2d 452, 462 (1991). If the instructions fairly and adequately present the issues and state the law, no reversible error is committed. *Id.* An erroneous instruction does not constitute reversible error where the instruction taken as whole neither misleads nor prejudices a party. *Id.* Only

instructions which are pertinent to the pleadings and the evidence should be given, but where it appears that the giving of the instruction did not result in any substantial injury, though not founded on the issues, the case will not be reversed. *Id.* at 260, 805 P.2d at 466. Additionally, the giving of an erroneous jury instruction does not generally justify granting a new trial unless the appellant can establish that he or she was prejudiced thereby, and that the error affected the jury's conclusion. *Id.* Whether a jury instruction should or should not have been given depends on whether there is evidence at trial to support the instruction. *Holzheimer v. Johannesen,* 125 Idaho 397, 400, 871 P.2d 814, 817 (1994).

The requested instruction regarding affirmative defenses is as follows:

1. The prospective business advantage of Highland Enterprise, Inc., through road building was unlawful or violated a defined public policy, specifically the laws and public policy protecting the habitats of endangered or threatened species of animals; or

2. Jennifer Lynn Prichard was in good faith asserting or attempting to protect a legally protected interest of her own that she believed might be impaired or destroyed by Highland Enterprises, Inc., building the roads in question, specifically the right to enforcement of the provisions of the law protecting the habitats of endangered and threatened species of animals; or

3. Jennifer Lynn Prichard's conduct that caused the breach was under all the circumstances justified. In determining whether the conduct was justified, you should consider:

 a. the nature of her conduct;

 b. The nature of the prospective business advantage involved;

 c. The relations, if any, among Jennifer Lynn Prichard, and Highland Enterprises, Inc.;

 d. The interest that Jennifer Lynn Prichard sought to advance by her conduct; and

e. The public benefit involved in protecting this economic opportunity and the public benefit involved in protecting individual freedom of speech, assembly and action in these circumstances.

Because jury instructions are examined based on whether the instruction fairly and adequately states the law, whether the appellants should have been allowed to submit their affirmative defense instruction to the jury turns on whether the law on intentional interference with a prospective economic advantage permits the appellants to assert an affirmative defense based on the justifications they asserted. The appellants argue they were justified in engaging in the tortious conduct because of their belief that they were preventing illegal logging and road-building activity in violation of the public policy protecting endangered species and the ecosystem and their good faith belief that they were protecting a "legally protectible" interest in the environment. The appellants also assert that the evidence at trial supported an affirmative defense instruction.

In reviewing the denial of a motion for a new trial, this Court considers the grounds upon which the lower court based its decision to deny the motion. Here, the trial court concluded that a finding that the conduct was improper necessarily requires a finding that the conduct was not justified. The trial court then determined that no evidence presented by appellants asserted that their conduct was proper and accordingly, the justification defense requested was unnecessary and would have only served to confuse the issues in the case.

 As this Court noted in *Barlow,* this branch of law ... has not crystallized a complete set of definite rules as to the existence or non-existence of privilege. . . . The issue in each case is whether the actor's conduct is justifiable under the circumstances; whether, upon a consideration of the relative significance of the factors involved, his conduct should be permitted despite its expected effect of harm to another.

*Barlow v. International Harvester Co.,* 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974) (quoting RESTATEMENT OF TORTS § 767 cmt. a (1939)). In general, once the elements for the tort are established, the interferor bears the burden of legally justifying the interference or establishing a claim of privilege. *Pleas v. City of Seattle,* 112 Wash.2d 794, 774 P.2d 1158, 1161 (1958). "No question of privilege arises unless the interference would be wrongful but for the privilege; it becomes an issue only if the facts charged would be tortious on the part of an unprivileged defendant." *Idaho First Nat'l Bank v. Bliss Valley Foods,* 121 Idaho 266, 286, 824 P.2d 841, 861 (1991) (quoting *Top Service Body Shop, Inc., v. Allstate Ins. Co.,* 283 Or. 201, 582 P.2d 1365, 1371 (1978)). However, even a recognized privilege may be overcome when the means used by the defendant are not justified by the reason for recognizing the privilege. *Id.* at 285, 824 P.2d at 859 (quoting *Top Service Body Shop,* 582 P.2d at 1371). In other words, otherwise justifiable conduct is rendered unjustified where improper means are employed by the defendant. *Barlow,* 95 Idaho at 893, 522 P.2d at 1114.

In examining the trial court's analysis on the issue, the court appears to reason that a defendant's conduct is never justified where improper means are employed. Therefore, according to the trial court, once a plaintiff has made a prima facie case of the tort, part of which is a showing that the defendant's conduct was improper, the defendant is then foreclosed from making any attempt at rebutting the plaintiff's case by demonstrating that the conduct, although wrongful, was justified.

However, case law has made clear that wrongful conduct can be justified if a privilege exists. However, the privilege cannot always save the conduct if the means of employing the privilege are not justified by the reasons behind the privilege. *Bliss,* 121 Idaho at 285, 824 P.2d at 859 (quoting *Top Service Body Shop,* 582 P.2d at 1371). In this case, Highland was able to prove that the conduct was improper. As the trial court noted, "[t]he only evidence established that each of the defendants acted in a way that was in violation of the law or closure order,

separate and apart from any message or words they may have said or conveyed." Therefore, whether a privilege existed based on the appellants' requested affirmative defense instructions on (1) illegal contract of Highland's or contract in violation of public policy; (2) good faith and (3) justification, depends not on the fact that the conduct was improper, as the trial court reasoned, but on whether there were sufficient facts in evidence to show that the conduct was proper because of a valid privilege and that the privilege had not been misused.

■ We find that the facts of the case did not warrant submission of the appellants' affirmative defense instruction. The crux of the appellants' argument for all three affirmative defenses is that protection of the environment warranted their activity and justified their conduct. As a matter of law, the asserted privilege of environmental protection, even if found to be a valid privilege, was misused by the appellants. The appellants are correct that the evidence presented at trial supported that they felt they were acting out of concern for the environment. However, even if there were evidence which supported their belief that the timber sale was illegal and endangered species did inhabit the Cove/Mallard area (see *infra* for discussion on trial court's denial of admission of biological testimony and Environmental Impact Statement), the acts of violence against Highland's equipment and work, violations of the closure order and trespass on Highland's equipment would still be a misuse of the appellants' asserted privilege. This type of illegal conduct combined with the fact that other means were readily available to allow appellants to achieve the same results illustrate that the means of employing the alleged privilege do not justify recognizing the alleged privilege of environmental protection and public policy. In this case, the appellants could have challenged the sale by filing suit once the administrative appeals process had been exhausted and they could have protested against the road building in areas where they did not violate the closure order or delay the work of Highland. Instead, they chose to violate closure orders, trespass and vandalize equipment. Thus, here, the

evidence did not support an affirmative defense instruction.

Accordingly, the trial court's denial of this aspect of the appellants' motion for new trial is affirmed.

**C. The trial court correctly ruled on appellants' evidentiary issues.**

*1. Standard of review*

■ Failure to admit evidence is an "error in law, occurring at the trial." I.R.C.P. 59(a)(7). The Court reviews trial court decisions admitting or excluding evidence under the abuse of discretion standard. *Morris v. Thomson*, 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997). In the case of an incorrect ruling regarding evidence, a new trial is merited only if the error affects a substantial right of one of the parties. *Id;* I.R.C.P. 61.

*2. The trial court properly excluded evidence of the Environmental Impact Statement and biological testimony.*

■ The trial court initially denied admission of the EIS noting that the ultimate issue in the case was whether property had been damaged and finding that the EIS and biologists' testimony would unnecessarily complicate and prolong the case. However, the trial court made it clear at the time of that ruling that the appellants were free to bring into evidence the reasons and beliefs behind their actions. The trial court stated:

My only hesitation here is that it would appear to me, and I don't need to make a ruling on it now so I won't, it appears to me that someone's state of mind is always an important thing when it comes to talking about punitive damages. And even though I'm not going to let someone come in here and say why the Forest Service should have entered into negotiations with the National Marine Fisheries Service or that ... I'm not going to permit that to happen. But I'm saying that perhaps it is relevant that a person was digging holes in the road because they wanted to protect the salmon and that they didn't have an evil motive; they had a pure heart and that's why they did that. And I think they

could probably do that without having a biologist from the Nez Perce Tribe come in here and talk about fish. . . .

The important thing is what was in their state of mind and whether or not they had a good heart or bad heart, so I'm not saying they can't get up and talk about it; I'm just saying what they can do through—I believe it would be inappropriate to talk about this Environmental Impact Statement.

The trial court reiterated such reasoning in denying the motion for a new trial stating that "evidence as to the legality of the EIS and its implications is not relevant to whether the defendants were acting with improper motives or using improper means, even if their beliefs were justified." We hold that the trial court did not abuse its discretion in denying admission of the EIS and the testimony of biologists. Testimony regarding the EIS and the EIS itself would have been very confusing, not only in its subject matter, but confusing as to the ultimate issues in the case. As the court stated, the real issue as to both the affirmative defense and as to punitive damages was the appellants' state of mind and whether an improper motive existed. The appellants were never precluded from bringing in evidence to demonstrate that their intent was pure and that they only desired to protect the environment. A complicated study and technical facts regarding validity of their beliefs was not necessary for the appellants to assert that they held the beliefs they did.

Accordingly, we affirm the trial court's denial of appellants' motion for a new trial as to the admission of the EIS and the biologists' testimony.

### 3. The trial court properly admitted evidence of letters and articles.

▆▆▆ In ruling on whether various letters and articles should have been admitted into evidence, the trial court reasoned that:

These articles and letters provide in large part relevant circumstantial evidence of the defendants' purpose for camping in the Cove/Mallard area the summer of 1993, and helps to explain the activities for which they were arrested. In addition, it is evidence of a campaign whose intent was to stop the road-building in Cove/Mallard. They support the reasonable inference that the present defendants had an intent to and did interfere with the plaintiff's performance of road-building.

The issue of undue prejudice is certainly a closer one. Defendants fear that the verdicts against them essentially punish them for being associated with Earth First!, in violation of their First Amendment rights. However, a defendant should not be able to prevent admission of relevant evidence simply because it may involve free speech and association interest. Although the evidence may be prejudicial, it is not unduly so. Only those articles related in time and content to the summer of 1993 Cove/Mallard protests were offered on the element of intentional interference and the nature and purpose of the 1993 campaign. Exhibit 61 was expressly admitted for the purpose of impeaching Ryberg's testimony that Earth First! disapproved of violence. In addition, the jury was told who wrote or read the articles and letters, and that person's activities in the summer of 1993.

The appellants argue that these articles are not relevant because they do not support any of the inferences of intent or knowledge for which they were offered. We disagree, in part, because the appellants' incorrectly state the necessary standard for proving intent and knowledge. Moreover, the articles and letters were relevant to explain the reasons behind the campaign at Cove/Mallard, how the campaign would function and instructed on how to go about hindering the progress of road building. Exhibit 77, for instance, addressed the proper method of removing survey stakes. The articles also illustrate that the appellants were aware of the effect their actions would have in delaying the road building. Exhibit 75 stated the costs the Forest Service incurred in 1992 and Exhibit 74 asked people to show up to stop the road building. In addition, the articles and letters were not unduly prejudicial. As the trial court noted, the jury was told who authored the articles and the role each defendant played in the summer of 1993. Although it was not proven that appellants not involved

in the writing or editing of the articles or letters had actually read the articles, a reasonable inference is that through consensus circles and the nature of the living experience during the summer, the appellants were aware of the ideas and thoughts expressed through the articles. Additionally, the mere fact that many appellants came from various parts of the United States illustrates that some were aware of those articles and letters soliciting their presence at the campaign.

The article that clearly had the most prejudicial aspect was exhibit 61, "Bomb-throwing: A Brief Treatise." However, the article was admitted for the purpose of impeaching the testimony of Ryberg after Ryberg had testified at great length that he believed in nonviolence and it was admitted with a limiting instruction that it could only be used against Ryberg. The article was clearly proper for the purpose of impeachment. The appellants argue that it was prejudicial as to each of them, but the trial court's instruction that it be applied only as to Ryberg sufficiently cured any prejudice it could have had against the other appellants. Ryberg should not be saved from impeachment merely because the appellants do not trust the jurors to perform their function of applying the evidence as they have been instructed to do.

In sum, in addressing each of the pieces of evidence, the trial court set out the relevance for each item and weighed its probative value against the harm of prejudice. This illustrated that the court perceived the issue as one of discretion and also that the decision was made within the correct legal standards, namely I.R.E. 403. The court exercised reason in determining that the evidence was properly admitted. Because the trial court did not abuse its discretion in determining that the articles and letters were relevant and not unduly prejudicial, we affirm the denial of the motion for a new trial on this basis.

**D. The damage award against Prichard was not the result of passion or prejudice.**

*1. New Trial*

In ruling upon a motion for a new trial premised upon inadequate or excessive damages, the trial court must follow the rule set out in *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979). The trial court must weigh the evidence and then compare the jury's award to what the court would have given had there been no jury. The verdict should not stand if the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice. *Quick v. Crane,* 111 Idaho 759, 768, 727 P.2d 1187, 1196 (1986). It is a jury function to set the damage award based on its sense of fairness and justice. As such, the trial court must defer to the jury unless it is apparent to the court "that there is a great disparity between the two damage awards and that the disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways." *Id.* at 769, 727 P.2d at 1198.

Here, the trial court correctly stated the standard to be applied in evaluating whether the damages were based on passion or prejudice. Although the judge did not engage in any specific evaluation of the award he would have made, he did evaluate the record and stated that after doing so, he did not find the verdict to be the product of passion or prejudice. The court stated, "[t]he evidence established a concerted effort by many persons to interfere with the Plaintiff's performance on a continual and debilitating basis. The evidence against Prichard was sufficient to justify the verdict against her." Although the judge's evaluation was minimal, it is sufficient to illustrate that he examined the damage award.

Moreover, the Court will not reverse a decision denying a new trial absent a manifest abuse of discretion when ruling on the motion. *Curtis v. Firth,* 125 Idaho 229, 230, 869 P.2d 229, 230 (1994). Here, the trial court clearly appreciated the nature of its discretion, properly exercised that discretion within the boundaries established in *Dinneen* and reached its decision through an exercise of reason. Although Prichard asserts that the only damage proven to have been caused

by her actions was in the amount of $1,566, the jury was instructed that:

> If you find that a defendant who did not personally perform a wrongful act nonetheless did pursue a common plan or design to commit that act with the actor by commanding, instigating, advising, aiding, abetting or encouraging the actor by words, gestures, looks or otherwise; then the conduct of the actor physically committing the wrongdoing was also the conduct of that defendant. If either is liable then both are equally liable.

Therefore, when the trial judge stated that the evidence established a concerted effort by many persons to interfere with Highland's performance, he demonstrated that he had taken into account all evidence presented, the acts of the other defendants and the tortious acts that occurred throughout the summer. The trial court thus weighed the evidence. On review, this Court does not engage in weighing the evidence but can review the record. *Quick,* 111 Idaho at 770, 727 P.2d at 1199. A review of the record also supports the trial court's decision not to grant a new trial. The record demonstrates that Prichard was a part of a group acting in concert to stop the road building. As a result of the delays, Highland suffered over $150,000 in damages. It is not necessary that the damages caused by one person acting in concert with other tortfeasors be proved with mathematical certainty. As noted earlier, this case is analogous to negligence cases where joint tortfeasors are responsible for an indivisible harm and the jury is asked to apportion the harm for which the tortfeasors are responsible. Here, the jury determined that Highland had suffered a total compensatory harm of $150,000. It was then reasonable for the jury, after hearing all of the evidence, to determine that Prichard was responsible for $16,667.00 of the total harm caused. In addition, the jury's determination that Prichard should be assessed $83,333.00 in punitive damages was not excessive. The record shows a continued effort to sabotage Highland in a manner that was potentially deadly and unreasonable.

Accordingly, we affirm the trial court's denial of the motion for a new trial as to the damages assessed against Prichard.

### 2. Remittitur

■ In order to grant a remittitur, the trial court must first determine that the jury's damage award was so excessive that it could only have been a product of passion or prejudice on the part of the jury. *Quick,* 111 Idaho at 770, 727 P.2d at 1198. Because the trial court properly determined that the damage award was not based on passion or prejudice, it properly denied the motion for a remittitur.

### E. The trial court properly submitted the issue of punitive damages to the jury.

Appellants assert that the issue of punitive damages was improperly submitted to the jury. This type of error falls under I.R .C.P. 59(a)(7), error in law, occurring at trial. In actions seeking recovery of punitive damages, "the claimant must prove, by a preponderance of the evidence, oppressive, fraudulent, wanton, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6–1604(1) (1998).

■ When reviewing the trial court's decision to submit the issue of punitive damages, the Court focuses on the sufficiency of the evidence. *Student Loan Fund of Idaho, Inc. v. Duerner,* 131 Idaho 45, 52, 951 P.2d 1272, 1279 (1998). The standard of review for punitive damages is to determine if the trial court abused its discretion in allowing the jury to consider punitive damages. *Id.* This Court has interpreted the abuse of discretion standard in the context of punitive damages as whether there was substantial evidence to support submitting the issue to the jury. *Id.* This Court has stated:

> An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." The justification of punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed "malice, op-

pression, fraud or gross negligence;" "malice, oppression, wantonness;" or simply "deliberate or willful."

*Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983) (citations omitted). Additionally, the primary purpose behind an award of punitive damages is to deter similar conduct from happening again in the future. *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 221, 923 P.2d 456, 465 (1996).

 The appellants' main argument is that "individuals acting out of love and respective [sic] for our life-sustaining environment who had a good-faith belief that the Cove/Mallard ecosystem was being illegally harmed by the U.S. Forest Service, simply as a matter of law cannot be regarded as having a malicious state of mind such as could support any award of punitive damages." The appellants also assert that the omission of their affirmative defense instruction was a significant factor in the jury's award of punitive damages. The trial court determined that:

> Based on the record and trial proceedings, this Court believes there was sufficient evidence presented for a jury to find each defendants' conduct in physically interfering with the road-building activities of the plaintiff to be outrageous, wanton, or the like—whether such conduct is categorized as civil disobedience, direct action or monkey wrenching.

Indeed, the record illustrates that the appellants were willing to engage in a variety of spiteful and willful acts to prevent the road building. The appellants pulled up stakes, caused delay, put nails in the road, spiked trees; all acts which can easily be categorized as wanton, malicious, deliberate and willful. The appellants acted in a manner that was an extreme deviation from normal standards of conduct. The appellants did not engage in peaceful protests, but in acts that attempted to hinder, delay and even harm. The justification of prevention of future conduct also exists in this case. Evidence was presented at trial that some appellants had met to organize a 1994 Cove/Mallard campaign. Clearly, the likelihood that this kind of conduct would occur again existed, thus bolstering the trial court's decision to submit the issue to the jury.

 The appellants' argument that their love of the environment makes acting with the state of mind necessary for a punitive damages award impossible is without merit. The ability to love and have warmth of feeling and concern for the environment does not absolve a person of the unreasonable and wilful conduct in which he or she engages. Even more, the fact that appellants have a great concern for the environment does not preclude them from the capacity to act in a way that is malicious. Additionally, the appellants assert that they were barred from putting on any evidence regarding the reasons for their action and thus could not prove that their conduct was not malicious. The appellants refer to their inability to bring into evidence the biologists' testimony and the EIS. This argument is without merit. Although appellants were barred from bringing in the specific technical evidence, they were never barred from expressing to the jury their love of the environment, their pure hearts in acting the way they did, and their belief that endangered species were being harmed.

 Last, we note that the appellants did not raise any other issues with regard to punitive damages that would allow this Court to address the amount of the award. As discussed at some length above, the appellants did not assert that the punitive damages were excessive under I.C.R.P. 59(a)(5) with respect to any appellants other than Prichard. Additionally, the appellants never raised the issue of whether the award of punitive damages violated due process standards based on the Supreme Court's decision in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) and this Court's decision in *Walston v. Monumental Life Ins. Co., supra.* Although appellants stated in one line in their briefing to both this Court and the trial court that "[a]s a matter of due process under the United States and Idaho Constitutions, the jury's entire punitive damages verdict must be stricken," this Court will not consider issues cited on appeal that are not supported by propositions of law, authority or argument. *Meisner v. Potlatch Corp.*, 131 Idaho 258, 263, 954 P.2d 676, 681 (1998) (citing *Saint Alphonsus Regional Med. Ctr. v. Ban-*

*non*, 128 Idaho 41, 910 P.2d 155 (1995)). A one sentence statement regarding whether the award violates due process is hardly sufficient to constitute argument and, in addition, the appellants cite no authority. Thus, the appellants have left this Court with no ability to address the substantial punitive damages award as to anyone except Prichard.

Accordingly, we affirm the trial court's denial of the appellants' motion with regard to the submission of punitive damages to the jury.

### F. Appellants were not entitled to additional peremptory challenges.

 Last, the appellants assert they should have been granted additional peremptory challenges at trial because the appearance of justice was lacking and there was a conflict among the defendants. The appellants request either a new trial or that the punitive damages award be stricken. Appellants' challenge falls under I.R.C.P. 59(a)(7), error in the law. The trial court determined that the motion to permit additional peremptory challenges was properly denied because "[t]he defendants presented joint defense throughout this proceeding, and did not offer any specific conflicts of interest that arose which would have warranted the awarding of more peremptory challenges."

 Idaho Civil Rule of Procedure 47(j) states:

> After all challenges for cause have been ruled upon by the court, each party shall have four (4) peremptory challenges which shall be exercised in accordance with this rule. In the event there are coparties as plaintiffs, defendants or otherwise, the court shall determine the degree of conflict of interest, if any, between or among the coparties and shall in its discretion allocate the full number of peremptory challenges authorized by this rule to each of the coparties, or apportion the authorized peremptory challenges between and among the coparties, or in its discretion allocate an equal or unequal number of peremptory challenges to each of the coparties.

Idaho Civil Rule of Procedure 47(j) vest broad discretion in the trial court in allocating peremptory challenges. *McBride v.*

*Ford Motor Co.*, 105 Idaho 753, 757–58, 673 P.2d 55, 59–60 (1983). In *McBride*, this Court addressed a trial court's refusal to grand additional peremptory challenges. We noted that the trial court had reviewed the record and found no indication of an antagonistic position between the plaintiffs, noted that no conflict or antagonism arose between the plaintiffs during the course of trial, and stated that the plaintiffs pursued a uniform approach throughout the proceedings. Under those circumstances, we found that there had been no abuse of discretion in the trial court's allocation of peremptory challenges. *Id.* at 758, 673 P.2d at 60.

 factors this Court addressed in *McBride* —whether there had been any indication of antagonism between the defendants and whether the defendants pursued a uniform approach during the proceedings—illustrate that in order to award peremptory challenges the record, at a minimum, must show some conflict between the plaintiffs. *Id.* Here, nothing in the record warrants such a finding. As the trial court noted, the appellants presented joint defenses and the only argument for conflict the appellants make is that the jury had to decide which appellants committed which acts. Although that may be true, the fact that certain appellants were found to have committed more of the acts than other appellants does not create the type of conflict requiring additional peremptory challenges. Ultimately, the overall approach of the appellants' defense was uniform; they believed they were justified in acting the way they did.

In sum, we affirm the trial court's denial of the appellants' motion for a new trial in this regard.

### IV.

### CONCLUSION

The trial court's decision denying appellants' post-verdict motions is affirmed. Costs on appeal to Highland.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL, concur.